# Docket No. 24-402

United States Court of Appeals
for the
Second Circuit

GRAND MEDFORD ESTATES, LLC,
SCHEYER COURT, LLC,

Plaintiffs-Appellants,

-against-

THE TOWN OF BROOKHAVEN
THE TOWN BOARD OF THE TOWN OF
BROOKHAVEN, THE PLANNING BOARD OF
THE TOWN OF BROOKHAVEN,

Defendants-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

PLAINTIFFS-APPELLANTS' BRIEF & SPECIAL APPENDIX

**SCHEYER & STERN, LLC**
Fredrick P. Stern (FS0882)
Attorneys for Plaintiffs, *Grand Medford Estates,
LLC and Scheyer Court, LLC*
120 Lake Avenue South, Ste. 27
Nesconset, NY 11767
Tel. (631) 265-8500
Email: Scheyerstern@gmail.com

## Table of Contents

PRELIMINARY STATEMENT      1

STATEMENT OF FACTS      1

    A. As to Grand Medford      1

    B. The Medford Gardens Wetlands Claim      16

    C. As to Quigley Estates      17

STATEMENT OF JURISDICTION      24

STATEMENT OF THE ISSUES      25

SUMMARY OF ARGUMENT      25

ARGUMENTS      26

POINT I

THE COMPLAINT STATES A CLAIM THAT CODE §§ SR-17( C) AND (F) ARE UNCONSTITUTIONAL SINCE THEY VIOLATE THE DUE PROCESS CLAUSE      26

A.      Code §§ SR-17( C) and (F) Are Unconstitutional Under the Due Process Clause      26

B.      Extension of Bond Term is Improper and Violative of Town Law  § 277(9)      31

C.      The Performance Bonds are Not Contractual in Nature      32

D.      Town Code  §§SR-17(C) and (F) Are Overbroad and Impermissibly Vague      33

*i*

Table of Contents (cont'd.)

Page

POINT II
THE LOWER COURT ERRED IN DISMISSING
COUNTS III, V, VI AND VIII WITH PREJUDICE ................................... 35

    A. Plaintiffs' § 1983 Procedural Due Process Claim ................... 35

    B. Plaintiffs' Substantive Due Process Claims ......................... 36

    C. *Monell* Liability ............................................................... 36

    D. *Monell* is Not Applicable to the Appellants' Claims ........... 40

POINT III
THE LOWER COURT ERRED IN DISMISSING APPELLANTS'
EQUAL PROTECTION CLAIM UNDER *MONELL* ............................... 41

POINT IV
THE LOWER COURT ERRED IN DISMISSING APPELLANTS'
FIRST AMENDMENT RETALIATION CLAIMS UNDER *MONELL* ...... 42

POINT V
GRAND MEDFORD   PROPERLY PLEAD A CLAIM THAT
CHAPTER 81 OF THE TOWN CODE IS UNCONSTITUTIONAL ......... 42

POINT VI
LEAVE TO REPLEAD ...................................................................... 44

CONCLUSION ................................................................................ 46

*ii*

TABLE OF AUTHORITIES

CASES                                                                    Page(s)

*Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33 (2d Cir. 2009)         33

*Bell Atl. Corp. v Twombly*, 550 US 544 (2007)                              31

*BLF Assoc., LLC v Town of Hempstead*, 59 AD3d 51 (2d Dept. 2008)           39

*Connecticut v Doehr*,  501 US 1 (1991)                                     28

*Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42 (2d Cir. 1991)      44

*Corsini v Nast*, 613 F App'x 1 (2d Cir 2015)                              45

*Cruz v TD Bank, N.A.*, 742 F3d 520 (2d Cir 2013)                          44

*Cunney v. Bd. of Trs. of Grand View,* 56 F. Supp. 3d 470 (S.D.N.Y. 2014) 29

*Diaz v Paterson*, 547 F3d 88 (2d Cir 2008)                                28

*Ford Motor Credit Co. v. NYC Police Dep't*, 503 F.3d 186 (2d Cir. 2007)   28

*Fuentes v. Shevin*, 407 U.S. 67 (1972)                                    28

*Gizzo v. Ben-Habib*, 44 F.Supp.3d 374 (S.D.N.Y. 2014)                     33

*Goney v SuttonPark Capital LLC*, 2021 U.S. App. LEXIS 32562
   (2d Cir Nov. 2, 2021, Nos. 21-188, 21-1101)                            45

*Green v. Town of Blooming Grove*, 879 F.2d 1061 (2nd Cir.1989)            36

*In re Bayswater Gracewood v Planning Bd. of N. Hills*,
   19 AD3d 411 (2d Dept 2005)                                             30

*Joy Bldrs., Inc. v Town of Clarkstown*, 165 AD3d 1084 (2d Dept 2018)   34, 38

*iii*

TABLE OF AUTHORITIES (cont'd.)

CASES                                                                    Page(s)

*Martz v Inc. Vil. of Val. Stream*, 22 F3d 26 (2d Cir 1994)                33

*Mathews v. Eldridge*, 424 U.S. 319 (1976)                                 28

*Matter of Golden v Planning Bd. of Town of Ramapo*,
    30 NY2d 359 (1972)                                               39

*McLaughlin v. Anderson*, 962 F.2d 187 (2d Cir. 1992)                      45

*Monell v Dept. of Social Servs.*, 436 US 658 (1978)                  36, 28, 41

*Oliver Schools, Inc. v. Foley*, 930 F.2d 248 (2d Cir. 1991)               45

*Rodrigues v Beekman*, 120 A.D.2d 724 ( 2d Dep't 1986),
    *dismissed*, 69 N.Y.2d (1987)                                      42

*Sandy Hollow Assoc. Llc & Port N. Constr. LLC v Inc. Vil. of Port
    Washington N.*, 2010 US Dist LEXIS 142396
    (EDNY Sep. 6, 2010, No. CV 09-2629)                               39

*Town of Chester v. Republic Ins. Co.*, 89 AD2d 959 (2d Dept. 1982)        31

*Town of Huntington v Beechwood Carmen Bldg. Corp.*,
    82 AD3d 1203 (2d Dept 2011)                                       39

*Town of Smithtown v Beechwood Tiffany, LLC*,
    2012 NY Slip Op 32859[U] (Sup Ct, Suffolk County 2012)            32

*Walker v Town of Hempstead*, 84 NY2d 360 (1994)                           38

*Whalen v. Cty. of Fulton*, 126 F.3d 400 (2d Cir. 1997).                   41

*iv*

TABLE OF AUTHORITIES

| STATUTES, RULES, CODES | Page(s) |
|---|---|
| Town Code of the Town of Brookhaven §SR-17(C) | 26, 29, 33, 34, 35, 37, 40 |
| Town Code of the Town of Brookhaven §SR-17(F) | 26, 29, 33, 34, 35 |
| Town Code of the Town of Brookhaven §SR-18 | 29 |
| Town Code of the Town of Brookhaven § SR-27(1) | 38 |
| North Hills Village Code §150-79 (B) | 30 |
| North Hills Village Code § 150-81 (B) | 30 |
| Smithtown Town Code § 248.17 et seq. | 33 |
| NYS ECL §24-0301(4) | 43 |
| NYS EDPL § 207 | 43 |
| N.Y.S. Town Law §277(9)(d) | 31, 32, 33, 34, 35, 37, 40 |
| Fed. R. Civ. P. 15(a) | 44 |
| 42 U.S.C. § 1983 | 35, 42 |
| U.S. Constitution, Amendment V | 29 |

*v*

# PRELIMINARY STATEMENT

This Memorandum of Law is submitted by the Plaintiffs, Grand Medford Estates, LLC and Scheyer Court, LLC (sometimes collectively referred to herein as the "Appellants"), in opposition to the motion by the Defendants, the Town of Brookhaven, the Town Board of the Town of Brookhaven and the Planning Board of the town of Brookhaven (collectively referred to herein as "the Town Defendants") to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Motion to Dismiss").

The Town Defendants moved to dismiss the Complaint based upon a claim that the Appellants claims were not ripe, among other grounds. The lower Court issued an Order determining that some of the Appellants' claims were not ripe. These claims are not the subject of this appeal. The Appellants appeal the lower courts dismissal of Counts I, III, IV, VV and VI and VIII of the Complaint as well as the denial of the Appellants request for leave to amend the Complaint.

## STATEMENT OF FACTS

### A. As to Grand Medford

Grand Medford's predecessor in interest was granted subdivision approval to subdivide real property located in Medford, New York known as "Map of

Medford Gardens" (the "Medford Gardens Subdivision"). ¶¶[1] 12.  The original

subdivision approval was received on October 19, 1998 but the map was not filed

with the Suffolk County Clerk's Office.  In January, 2007 Grand Medford filed an

application for "re-approval" with the Planning Board there having been no

change in circumstances with respect to either the zoning, the proposed map, the

relevant law or the area itself.  This application was later converted to a  "re-

application" to the Planning Board in November, 2007.  ¶13.  On July 14, 2008 a

public hearing was held on Grand Medford's  "re-application" hearing.   By letter

dated August 7, 2008 Grand Medford was notified that the Planning Board had

denied Grand Medford's "re-application" without benefit of findings of fact.  ¶14.

  On August 7, 2008 Grand Medford filed the first of four Article 78

proceedings in the Supreme Court of the State of New York, Suffolk County

("State Court") to compel the Planning Board to issue findings of fact.  ¶15.  On

February 23, 2009 the State Court issued an Order  "direct[ed] the [Planning

Board] to submit a decision together with findings of fact and reasons for its

denial of the petition." ¶16.

The Town Defendants did not comply and on April 10, 2009 the Planning

Board moved to reargue the February 23, 2009 Order of the State Court (the

---

[1]"¶___" refers to paragraphs in the Amended Complaint located at A-324 to A-379.

"Reargue Motion") resulting in a determination that the actions of the Planning Board in denying the application "was not supported by a rational basis and [was] arbitrary and contrary to law" as a result of the Planning Board failing to act "[c]onsistent with the concept of due process" and granted a rehearing of Grand Medford's "re-application". The Planning Board was further directed "to solely determine whether a change of circumstances or new evidence warrant[ed] revocation of its previous decision. ¶18.

On May 25, 2010 the parties entered into a "So Ordered" Stipulation of the Supreme Court Action which required the Planning Board to grant conditional preliminary subdivision approval to the Medford Gardens Subdivision in accordance with the Exhibit A annexed thereto and also granted conditional final approval of Section I and Section II of the Medford Gardens Subdivision (the "Stipulation of Settlement") in exchange for an agreement from Medford Gardens agreeing to deed 9 acres of land to the Town of Brookhaven as "Open Space". ¶¶19-21.

Importantly, Exhibit A to the Stipulation of Settlement was a May 21, 2010 "cluster treatment" conditional subdivision approval and the May 24, 2010 final approval for "Sec. 1" of the Medford Gardens Subdivision which refers to said stipulation. The Defendants have not provided that approval instead only

3

submitting the May 24, 2010 final approval for "Sec.1" of the Medford Gardens Subdivision in connection with their motion while also failing to include either the Stipulation of Settlement, the May 24, 2010 "cluster treatment" approval, the subdivision approvals for Sections II-IV of the Medford Gardens Subdivision, the subdivision map or copies of the Performance Bond(s) for Medford Gardens.

The Planning Board's May 21, 2010 conditional final approval required that Grand Medford post a "performance bond, or cash in lieu of, in the amount of $330,000.00 and $211,000.00, together with dedication papers, approved by the Town Board. All performance bonds and/or other security herein required shall run for a term ending upon the Town Defendants's determination of satisfactory completion and acceptance of the public improvements so bonded or secured. Applicant is responsible for maintenance of said roadway inclusive of striping, paving, snow and ice removal and keeping same free of litter and debris until such time as the roadways are dedicated and accepted into the Town's Highway System." ¶24.

The performance bonds required by the May 24, 2010 Planning Board approval on Medford Gardens, Section I only covered the following improvements:

"a. As to the $330,000.00 Bond: Storm Drains: 108 l.f. of 18", 581

4

l.;f. [o]f 24", 232 l.f. of 30", 1 manhole, 1 single catch basin, 2 headwalls, 2 recharge basins wit[h] fencing and plantings, 420 l.f. of access road, 47 street trees and 17 monuments.

     b. as to the $211,000.00 Bond: Storm[]Drains: 713 ;.f. of 18" and 60 l.f. of 24", 2 manholes, 5 single catch basins, removal of 1,910 l.f. of existing curb, installation of new concrete curb, patch paving and sidewalk (north side only) on Fire Avenue."

While the Defendants failed to provide  the May 24, 2010 Planning Board approval on Medford Gardens, Section 2 in connection with this motion, the only improvements required by same were the following:

     "a.  as to the $16,800.00 Bond: Drainage Pipes; updated plans show revised pipe size connection to recharge basin on section 1; Bond now includes the removal of the existing concrete curb and installation of new curb and patch paving along frontage, as required to install drainage pipe as show on plans.  Street Trees: Increase from one per lot to 40' on center as per updated policy.  Barricade; No longer a requirement and has been removed from bond." ¶25.

On January 10, 2013 Great Medford was forced to file a third Article 78 proceeding to compel the Planning Board to approve the final "Map of Medford Gardens" so that it could be filed with the Suffolk County Clerk. ¶27.

While not a requirement of the conditional final approval, as a prerequisite to constructing the Medford Gardens Subdivision, the Town of Brookhaven Highway Department ("Highway Department") required that Grand Medford post a $680,000.00 highway bond to guarantee completion of off-site improvements to Country Road which is a public highway (the "Highway Bond"). ¶28.  Grand

Medford posted a cash deposit of $680,000.00 with the Town of Brookhaven for the Highway Bond. ¶29. Despite the Highway Superintendent confirming that all of the requirements of the Highway Bond had been met, instead of releasing the Highway Bond to Grand Medford, pursuant to a Resolution dated July 12, 2018 the Town Board, upon the recommendation of the Highway Superintendent, converted the Highway Bond to "cash security in lieu of a performance bond for the Planning Board to ensure the completion of the requirements for the construction of public improvements for the subdivision Map of Medford Gardens at Medford, Sections 1, 2, 3 and 4" (the "Performance Bond"). ¶30.

A July 12, 2018 Town Board Resolution further "reallocated" the cash security for the Medford Gardens subdivision as follows:

|  | FROM | TO |  |
|---|---|---|---|
| Section 1 | $170,000.00 | $150,000.00 |  |
| Section 2 | $200,000.00 | $ 55,000.00 |  |
| Section 3 | $102,000.00 | $237,000.00 |  |
| Section 4 | $210,000.00 | $240,000.00 | (¶31). |

This Town Board Resolution contradicts the Planning Board subdivision approval and, while increasing the overall amount of the Performance Bond, allocated the sums being held to specific sections of the Medford Gardens Subdivision Map despite there being no requirement that a performance bond be posted for Section 3 and Section 4. ¶32. Upon information and belief this cash

deposit is in a non interest bearing municipal account causing Plaintiffs to lose approximately $25,000 a year in lost interest calculated at today's 4% average approximate treasury rate. The $680,000.00 which was required by the Town Board resolution was significantly more than the $330,000.00 and $211,000.00 performance bonds required by the May 24, 2010 conditional final approval. ¶33.

On April 12, 2019 Grand Medford was advised by the Town of Brookhaven that, in addition to the $680,000.00 Performance Bond being held to secure the completion of the improvements to the Map of Medford Gardens, the Town was demanding that Grand Medford deposit the sum of $500.00 to secure "the completion and acceptance of the public improvements" in order to obtain a Certificate of Occupancy for the completed single family residences located in the Medford Gardens Subdivision. ¶34. On August 13, 2019 the Law Department advised Grand Medford that the $500.00 deposit would be reduced to $100.00 per lot. ¶¶35-39.

On or before July 22, 2020 the improvements required by the Performance Bond had been completed and Grand Medford had obtained final approval from the relevant departments at the Town that it had complied with the requirements of the conditional final approval. ¶40. On July 22, 2020 and September 3, 2020 Grand Medford demanded the release of the Performance Bond. ¶41-42.

On November 24, 2020 the Town of Brookhaven Planning Department ("Planning Department") acknowledged receipt of asphalt core samples for the installed roadways that are "acceptable, thickness" but advised that "approval is not given until the project is completed to account for determination, heaving, drainage, etc." ¶43.

Between January, 2020 and September 9, 2020 the Planning Department ) denied final approvals for 5 single family dwellings constructed in the Medford Gardens Subdivision based upon the erroneous claim that the respective driveways were not constructed with a "ridge" in violation of the Town of Brookhaven Stormwater Pollution Prevention Plan (SWPPP). Notably, the entire development had previously already received a SWPPP waiver from the Town. ¶44. Consisten with this development wide SWPPP waiver, this requirement had not been imposed on the final inspections of the first 40 single family dwellings in the Medford Gardens Subdivision which had passed their final inspections prior to September 9, 2020. ¶45-46. The Town did not apprise Grand Medford at any time during the development process or before, of their intent to require compliance with the SWPPP requirements. ¶47.

The Town Defendants ultimately acknowlege that Gardens had a SWPPP waiver and eliminated the requirement though not the consequences that this

further delay caused to Grand Medford.  ¶49.  In the wake of this fabricated

requirement,  the final planning inspections and certificates of occupancy, and

therefore the transactional closings, for these 5 single family dwellings were held

up for many months.  ¶50.  The  SWPPP requirement was part of a Town

endorsed policy  delay the final approval of the improvements thereby forcing the

developer to continue to maintain, own, and insure these improvements by

unlawfully refusing to accept the road dedications and release them from their

performance bonds.  ¶51-52.

On November 20, 2020 the Town Defendants advised Grand Medford  that

there was yet another previously undisclosed and extortionate Town "policy"

which was to hold the certificates of occupancy for the last 2 single family

dwellings constructed in the Medford Gardens Subdivision hostage until the

Planning Department staff issued final approval for the release of the Performance

Bond.  No notice complying with the due process requirements of the 14th

Amendment were afforded to Grand Medford  prior to this decree by the Planning

Department staff.  Neither the New York State law, Brookhaven Town Code, the

conditional final approval, the Performance Bond, the Stipulation of Settlement or

the respective building permits authorized the Town Defendants to hold these

certificates of occupancy hostage in such a manner.  At the time the Planning

9

Department staff imposed this Town policy these single family homes were in contract with 3rd parties who could not close title until the Certificates of Occupancy had been issued. ¶53. This purported Town policy resulted in the seizure of over $1,000,000 of capital which was tied up in these two homes, and was fabricated out of thin, air, without legal basis, and without notice, at the very moment when Grand Medford was to realize the majority of the return on its' investment in the Medford Estates Subdivision. ¶54.

These actions on the part of the Town Defendants required that Grand Medford's bond, *for a fourth time,* and all in excess of the $680,000.00 cash Performance Bond, the $500.00 certificate of occupancy bonds and the 5 SWPPP designated parcels, almost 1 million dollars in capital. The Town has created an ever escalating scheme to improperly encumber and seize Grand Medford's capital and thwart its attempts to obtain the release the Performance Bond. The Town was illegally attempting to seize supplemental collateral in a manner for which it lacked authority. ¶57-¶58.

On December 2, 2020 the Planning Department confirmed that this extortionate and unconstitutional policy of holding Certificates of Occupancy hostage until it issues final approval for the release of the Performance Bond to the Town Board was in fact a Town policy. This policy is NOT published anywhere,

10

is not in the Town code, is not on the permits, filed map, approval grants or on the multiple court ordered stipulations. As such it cannot properly be reviewed, appealed, or challenged in any other manner although it violates *per se* Grand Medford's due process rights. ¶59.

This Town policy and the full sweep of the Town's aforementioned illegal acts were not applied to the subdivisions of dozens of other similarly situated Brookhaven developers including but limited to: Beechwood Homes, AVR Realty, Island Estates, TIBI Development Group, Calvosa Homes, Landmark Builders, Mike Kelly Development, Pinewood Builders, Benjamin properties, Heatherwood communities, Klar Realty, Nelin Real estate, Ornstein Leyton, Timber Ridge Homes, or Pulte Homes. Nor were they applied to other similarly situated Brookhaven, bonded, land developments including but not limited to Country Woods at the Colony Preserve, The Ranches at Eastport, Riverwalk in Patchogue, Rolling Hills, Monterry Oaks Development, Norton Park D, Chauncy Coram Estates. The Planning Department's imposition of this requirement on only Grand Medford represented a violation of its rights to equal protection under the Constitution. ¶60.

The Planning Department refused to approve the release of these Certificates of Occupancy for a period of approximately one month. This conduct resulted in

11

an improper attempt by the Planning Department to circumvent the Planning Board's authority to establish conditions for subdivision approval and sought additional security for the performance of the improvements contained in the conditional final approval in excess of the Performance Bond all without any legal authority. The Planning Department was well aware that, by holding up the final two Certificates of Occupancy, they were tying up almost $1 million in capital and preventing third party purchasers from closing on these finished dwellings and putting their mortgage commitments at risk. ¶61. The Commissioner of the Planning Department further advised representatives of Grand Medford that if it threatened to bring a lawsuit to expose this extortionate and unconstitutional conduct the Town Defendants would retaliate by further preventing the issuance of any Certificates of Occupancy. ¶62.

On January 5, 2021 the Deputy Commissioner of Planning persisted in this extortionate conduct and insisted that the final 2 Certificates of Occupancy would be held "until all public improvements have been completed to the satisfaction of all involved departments". ¶64-66.

In early January, 2021 counsel for Grand Medford wrote to the Commissioner of Planning, Town Attorney and Town Supervisor advising them of the failure of the Town to properly issue the final 2 Certificates of Occupancy. ¶67.

The final 2 Certificates of Occupancy were not issued until in or about April, 2021 all to the detriment of Grand Medford. ¶69.

On July 12, 2021 the Performance Bond expired pursuant to NYS Town Law § 277(9)(e) which requires that the Town undertake default proceedings before the end of the 3 year period following the posting of the Performance Bond. ¶75. In or about October, 2022 Grand Medford made a third demand for the release of the Performance Bond. ¶76. No extension of time for the Grand Medford to complete the improvements required by the conditional final approval had been requested by Grand Medford and no resolution granting an extension of time had been issued by the Planning Board. ¶¶77-79. The Town Board will not entertain an application by Grand Medford to release the Performance Bond without a recommendation from the Planning Department thereby effectively depriving Grand Medford of an opportunity to be heard on the subject of the release of the Performance Bond. ¶80.

In response to Grand Medford's third demand for the release of the Performance Bond, the Town Defendants improperly and arbitrarily demanded that Grand Medford perform hundreds of thousands of dollars of maintenance work to the Medford Gardens Subdivision which was not a condition of the conditional final approval or the Performance Bond. ¶81. On October 20, 2022 the Planning

13

Department issued a "Punchlist for Medford Gardens Section 1-4" (the "Medford

Gardens Punchlist") advising that "[t]he following items must be completed prior

to receiving a recommendation for a release of the bonds on the aforementioned

project" which included the following maintenance items that are not covered by

the Performance Bond:

> "4.  The damages asphalt cracks running the width of both
> [Candice] Court and Watch Hill Avenue must be removed 15' in width
> curb to curb.  The pavement must be re-installed, and the joints sealed
> with liquid AC".
>
> "5.  All potholes and damaged asphalt must be sawcut in 4' x 4'
> sections.  The pavement must be re-installed with liquid AC dealing
> the joints."
>
> "6.  The apron at 3205 Watch Hill Avenue is spalling and must
> be replaced".
>
> "7.  All cracked, broken, off-set, and sections of curb less than
> 8' in length must be removed and re-installed in 8' minimum sections."
>
> "8.  The damaged area that is holding water at the intersection
> Watch Hill Avenue and Fire Avenue must be removed to the center
> line and re-installed.  The joints must be re-sealed with liquid AC".
>
> "9.  The [j]oint where [Candice] Court meets Country Road
> must be re-sealed with liquid AC."
>
> "10.  The intersection of Watch Hill and Country has a large
> ponding area which must be addressed".
>
> "11.  The manhole between Devon Avenue and New London
> Avenue must have a closed cover."
>
> "12.  The joint the length of Fire must be sealed with liquid
> AC."
>
> "13.  Remove all encroachments into the ROW's including
> monuments and light poles on Country Road."
>
> "14.  All catch basis and structures must be cleaned and
> scarified."

"15.  All roads must be cleaned including removal of vegetation between the asphalt and curb line."

"16.  All dead and missing trees must be installed and replaced throughout the subdivision."

"17.  Remove all conduits in the ROW or place within utility boxes."

"18.  The following items must be completed in the recharge basins:

       a.  Clean and scarify the upper and low.

       e.  Replace all dead trees."

"19.  All joints and cracks must be sealed with liquid AC."

"20.  Topsoil, seed and fill in the low spots in the ROW as needed." ¶82.

While the Performance Bond does not, and cannot under N.Y.S. Town Law 277(1), cover maintenance items, the Meford Gardens Punchlist further made the claim that "[i]tems may also be added due to damage and deterioration until such time as the dedication is completed."  ¶83.

From 2019 to 2022,  51 homeowners as well as other residential and commercial traffic have made continual use of the roadways installed as part of the Medford Estates Subdivision. This caused repeated impacts, wear and tear, and damage to these roadways which the Town is now requiring that Grand Medford repair as part of its unilateral amendment to the conditional final approval.  ¶84. On at least two occasions the Town used its' own snow plowing equipment to maintain the roads of the Medford Gardens Subdivision.  The use of this heavy equipment caused damage to the roads and curbing which the Town is now

15

requiring that Grand Medford repair. ¶85.   The items on the Medford Gardens Punchlist  include maintenance and/or repairs of the previously installed, inspected, and approved improvements which have been thereafter  impacted and or damaged by third parties including the Town itself, over the course of the previous three years.  ¶86.  The items of work contained on the Medford Gardens Punchlist are not requirements of the conditional final approval or the Performance Bond.  ¶87.

## B. The Medford Gardens Wetlands Claim.

Throughout the construction of the public improvements on the Medford Gardens Subdivision the Town had decreed that none of the topsoil located thereon could be removed from the site.  As a result, the topsoil was scraped from other portions of the site and stockpiled on Lot 26  in the Medford Estates Subdivision. ¶70.  On May 3, 2022 the Department of Law notified Grand Medford  by virtue of a Notice of Acquisition that it intended to acquire Lot 26 based upon a claim that, as a result of the stockpiling of topsoil thereon, portions of Lot 26 had already been designated by the Town to be "wetlands" by virtue of the definition of "wetlands" contained in Brookhaven Town Code § 81-3.  ¶71.   No  hearing on the issue of whether Lot 26 was properly designated as wetlands was held and Grand Medford was afforded no other opportunity to dispute this designation.  The designation of Lot 26 as wetlands by the Town is not an issue in the eminent domain proceeding

16

commenced by the Town to acquire Lot 26. ¶72. The designation of Lot 26 as "wetlands" without notice and an opportunity to be heard on that issue is unconstitutional and preempted by the New York State "Freshwater Wetlands Act" (ECL §24-0101) (eff. September 1, 1975). ¶74.

## C. As to Quigley Estates.

Scheyer Court, LLC's ("Scheyer Court") predecessor in interest was the owner of a 39.45 acre parcel of real property located in Coram, New York ("Quigley Estates"). ¶97. On May 10, 2011 a proposed subdivision map was filed with the Planning Department. After a series of improper and unconstitutional actions on the part of the Planning Department which included the refusal to schedule a public hearing on the subdivision application, an action was brought pursuant to Article 78 in the State Court to compel the Planning Board to hold a public hearing. ¶98. On March 26, 2013 a Stipulation of Settlement was executed scheduling a public hearing on the subdivision application for April 22, 2013. ¶99.

On May 29, 2013, with the Planning Board refusing to issue a decision on the application unless the proposed subdivision map was modified to meet the demands of the community, a second Article 78 proceeding was commenced in the State Court to compel the Planning Board to render a decision on the pending subdivision application. ¶100. On August 28, 2013 the Planning Board issued a

conditional approval on the subdivision map which contained improper and unconstitutional requirements. ¶101.

On September 6, 2013 a third Article 78 proceeding was commenced in the State Court seeking certiorari and an injunction preventing the Planning Board from imposing improper conditions which amounted to a due process violation. ¶102. On March 24, 2014 the third Article 78 proceeding was resolved by execution of a "So-Ordered Stipulation of Settlement" which modified the conditional approval issued by the Planning Board (the "Quigley Order"). ¶103. The terms of the Quigley Order provided that the property owners could post a "subdivision bond equal to the amount of work remaining at the current Town rates for such improvements". ¶104. The Quigley Order further stated that the Town "shall not unreasonably withhold acceptance of said improvements. Upon the [Town's] acceptance of the public improvements, the Petitioner shall submit a Town Road bond and/or a maintenance bond to insure the public improvements installed..." ¶105. In exchange for this settlement the property owners were required to deed 19.7 acres of unidentified land to the Town of Brookhaven as "Open Space". ¶106.

The conditional final subdivision approval of Quigley Estates issued by the Planning Board on October 16, 2014 did not call for a performance bond. ¶107. In

December, 2019 the Planning Department determined that a Performance Bond

was needed to ensure construction of the improvements outlined in the conditional

final approval and estimated that the cost of same was $845,000.00. ¶108.

Between December, 2019 and November 19, 2020 Scheyer Court, LLC partially

completed the improvements.  ¶109.

On November 19, 2020 Scheyer Court, LLC advised the Planning

Department that the following improvements had already been completed:

|  | (Amount estimated for completion in Planning Department Staff performance bond calculations) |
|---|---|
| a) Storm drain pipes installed | $95,250.00 |
| b) Manhole covers installed | $35,000.00 |
| c) Single inlet catch basins installed | $56,000.00 |
| d) Asphalt paving (first lift) | $117,600.00 |
| e) Curbing installed | $58,800.00 |
| f) Stabilization | $9,800.00 |
| g) Hydrants installed | $6,000.00 |
| h) Open space and buffer fencing installed | $48,920.00 (¶110). |

Confirming that the improvements set forth hereinabove had been

completed, on January 5, 2021 the Planning Department reduced the Performance

Bond to $508,348.50 and improperly demanded that some of the items covered by

the Performance Bond  be completed prior to acceptance thereof. ¶111.   On

January 8, 2021 Scheyer Court rejected both the amount proposed for the

Performance Bond and the Town's demand that additional improvements be

performed prior its' acceptance of the bond. Counsel for Scheyer Court advised the Town that all of the 31 approved lots had contracts pending with third parties and that breaches would result if the Performance Bond were not immediately accepted and building permits issued. ¶112. In or about January, 2021 the Planning Department agreed that it would accept a Performance Bond[2] in the amount of $460,428.50.

The Performance Bond specifically stated that it covered only those improvements which were contained on the "proposed final plat of subdivision known as Quigley Estates @ Medford... as set forth at meeting of the Town of Brookhaven Planning Board on October 6, 2014 in the attached Planning Board approval letter dated October 16, 2014..." ¶114. The Defendants have failed to provide in conjunction with their motion either the Quigley Estates subdivision approval, the proposed final plat of subdivision of Quigley Estates @ Medford or the Performance Bond.

Importantly, the October 16, 2014 Planning Board approval letter is devoid of any requirements regarding the performance bond to be submitted by Scheyer Court, LLC. ¶115. By September 21, 2022 all of the improvements required by

---

[2]While Scheyer Court originally posted a cash Performance Bond in this amount, this was converted to a surety Performance Bond on April 16, 2021 and the cash deposit was refunded to Scheyer Court. ¶113.

the subdivision map had been completed and inspections by various representatives of the Town had confirmed that they were installed and approved. Pursuant to Town policy, the Town inspects one aspect of the infrastructure then allows the developer to proceed to the next aspect. So by definition when the developer has installed the 2nd lift of road asphalt, the prior curbing, utilities, drainage, manholes, etc. have been inspected and approved. Quigley Estates had all such approvals and inspections. ¶116.

On September 21, 2022 and October 17, 2022 counsel for Scheyer Court demanded the release of the Performance Bond which demand was ignored by the Town. ¶¶117-118. On October 17, 2022 the Planning Board advised Scheyer Court that it was refusing to recommend release of the Performance Bond to the Town Board and advised that, prior to the issuance of such a recommendation, it would require "replacing dead trees in the recharge basin and street, topsoil and seeding the shoulders, removing the boulder from the Town [right of way], cleaning the streets, and cleaning all basins" none of which was required by the Performance Bond and all of which amounted to maintenance and/or repairs. ¶119. The Planning Department's October 17, 2022 response further provided that "[t]his is not a complete list..." ¶120.

On November 3, 2022 the Planning Department issued a "Punch List" (the "Quigley Punchlist") which provided that "[t]he following items must be completed prior to receiving a recommendation to release the bonds on this project" which included the following maintenance items  not covered by the Performance Bond:

> "6.  The sidewalk on the north end of Mill Road requires an ADA ramp installed to ADA specifications."
> "7.  All mailboxes in the common drive of the cul-de-sac of Scheyer Court must be relocated to the Town ROW."
> "8.  All curbs must have a 6" reveal."
> "9.  All cracked, broken, and off-set sections of curb must be removed and reinstalled."
> "10.  Replace all dead trees including those in the recharge basin."
> "11.  Topsoil and seed shoulders as needed."
> "12.  All catch basins and structures must be cleaned and scarified."
> "13.  All roads must be cleaned including vegetation between the curb and asphalt."
> "14.  The boulder in the ROW must be removed."
> "15.  The basketball backboard in the ROW must be removed."
> "16.  The height of all valves, meters and utility boxes must be adjusted to be flush with grade as needed."
> "17.  All damaged asphalt and depressions in both the cul-de-sacs must be repaired to the satisfaction of the Town of Brookhaven."
> "18.  The following items must be completed in the recharge basins:
>> a.  Clean and scarify the floor
>> d.  Hydroseed the slopes.
>> e.  Reshape slopes as needed due to run-off."
> "19.  All joints and cracks must be sealed with liquid AC".

¶121.

22

The Defendants failed to supply a copy of the Quigley Punchlist as an exhibit to their motion to dismiss instead annexing a copy of an email from Town EngineerBruce Schaal.

While the Performance Bond does not, and cannot under N.Y.S. Town Law 277(1), cover maintenance items, the "Punchlist" further made the claim that "[i]tems may also be added due to damage and deterioration until such time as the dedication is completed." ¶122.

The Quigley Punchlist also requires the installation of an "ADA ramp" on the north end of Mill Road which was not a requirement of the subdivision approval or the final plat. From 2019 to 2022 31 homeowners as well as other residential and commercial traffic including buses, garbage trucks, moving trucks, home delivery trucks and the like had made use of the roadways installed as part of Quigley Estates. This caused continual impacts, wear and tear, and or damage to these roadways which the Town is now requiring that Scheyer Court repair as part of its unilateral amendment to the conditional final approval. ¶124. On at least one occasion the Town used Town owned snow plowing equipment to maintain the roads of Quigley Estates. The use of this heavy equipment caused damage to the roads and curbing which the Town is now requiring that Scheyer Court repair.

23

¶125.   The items on the Quigley Punchlist include maintenance and/or repairs of the previously installed improvements which have been approved by the Town and thereafter  damaged by third parties over the course of the past three years.  ¶126. The items of work contained in the Quigley Punchlist are not requirements of the conditional final approval or the Performance Bond.  ¶127.

By Order and Judgment by the Honorable Arlene R. Ross dated January 17, 2024 Plaintiffs' Complaint was dismissed in its' entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Specifically, the lower Court dismissed Counts I, III, IV, V, VI and VIII with prejudice and it is this portion of the determination which is the subject of this appeal.

(*Grand Medford Ests., LLC v Town of Brookhaven*, 2024 US Dist LEXIS 8708 [EDNY Jan. 17, 2024, No. 22-CV-7834 (ARR) (ARL)]).  (A-2); (SPA-2).

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal from a final decision of a U.S. District Court under 28 U.S.C. §§ 1291 and 1294.

On February 14, 2024 filed a Notice of Appeal of the Order and Judgment of the Honorable Arlene R. Ross of the Eastern District of New York dated January 17, 2024 rendering this appeal timely.

Pursuant to Local Rule 31.2 Plaintiffs' Brief is due on April 11, 2024.

24

## STATEMENT OF THE ISSUES

Plaintiffs respectfully presents the following issues for review:

1. Whether the District Court erred when it dismissed the Complaint where Plaintiffs' as-applied due process challenge to Brookhaven Town Code sections SR-17(C) and (F) (Count I)?

2. Whether the District Court erred when it dismissed the Plaintiffs' § 1983 procedural due process claim (Count III) ?

3. Whether the District Court erred when it dismissed the Plaintiffs due process challenge to the Town of Brookhaven Wetlands & Waterways Ordinance (Count IV) when it dismissed with prejudice?

4. Whether the District Court erred when it dismissed the Plaintiffs' § 1983 equal protection claims (Counts V and VI) on *Monell* grounds?

5. Whether the District Court erred when it dismissed the Plaintiffs' § 1983 substantive due process claims (Count VIII) on *Monell* grounds?

## SUMMARY OF ARGUMENT

Contrary to the findings of the lower Court, there is no procedure available to the Appellants to obtain a release of their respective performance bonds since, unless the Appellants capitulate and comply with the ever growing "punchlist" prepared by the planning department staff, they can never have their due process hearing before the Town Board on the issue of whether they have complied with the requirements of the respective subdivision approvals and bonds. This circuitous reasoning would require the Appellants to concede to these

25

requirements in order to obtain a hearing before the Town Board, thereby rendering their claims that these conditions are unconstitutional moot.

Likewise, the lower Court determined that the Appellants claims are contractual in nature but also decided that they were obligated to perform obligations (a/k/a the punchlist repairs that are not required by any of the contracts at issue).

Finally, the lower Courts dismissal on *Monell* grounds was inappropriate since the Complaint alleged that the Town repeatedly reiterated to Appellants the policies alleged in the Complaint.

## ARGUMENTS

## POINT I

## THE COMPLAINT STATES A CLAIM THAT CODE §§ SR-17( C) AND (F) ARE UNCONSTITUTIONAL SINCE THEY VIOLATE THE DUE PROCESS CLAUSE

A.    Code §§ SR-17( C) and (F) Are Unconstitutional
Under the Due Process Clause[3].

Based on the facts previously set forth hereinabove, Plaintiffs have plead that Code §§ SR-17( C) and (F), as applied to them, are unconstitutional and violate their due process rights because they are not entitled to a hearing before the Town

---

[3]The Appellants do not challenge on this appeal that portion of the Order which determined that the as-applied challenge to the Brookhaven Tow Code is unripe.

Board to determine whether the performance bonds should be released unless they comply with the unconstitutional condition of performing repairs and maintenance on the subdivision infrastructures which are not required by either the bond or the subdivision approvals.

The lower Court found that the portion of the Plaintiffs' claims which alleged that these code sections are unconstitutional are ripe for determination but, ultimately, dismissed them with prejudice based upon a finding that the Plaintiffs do not have a constitutionally cognizable property interest in the respective performance bonds. The lower Court, however, misunderstood the Plaintiffs argument which is that, with regard to the evergrowing punchlist of repairs and maintenance (which should be the subject of maintenance bonds under Brookhaven Town Code § SR-18 and not the respective performance bonds), there is no due process mechanism for the Plaintiffs to dispute these unconstitutional conditions. Under the Town's interpretation of the Code, the Town Board can simply refuse to hear the application to release the bonds until the Planning Board and the Highway Department approve same so the Plaintiff has no choice but to comply with the demands of these entities despite the fact that there is no contractual or statutory requirement that they do so. The lower Court even affirmed that the Plaintiff would have to obtain the Planning Board and Highway Department approval (ie -

27

perform the repair and maintenance punchlist) in order to obtain a due process hearing which would then render the Plaintiffs' claims that these requirements are unconstitutional moot.

In *Diaz v Paterson*, 547 F3d 88 (2d Cir 2008) this Court held that "'[p]arties whose rights are to be affected' are entitled to 'notice and an opportunity to be heard...at a meaningful time and in a meaningful manner.' *Fuentes v. Shevin*, 407 U.S. 67 (1972) (internal quotation marks omitted). Evaluation of due process challenges to statutes affecting property interests traditionally has required a two-part analysis: (1) does the statute authorize the deprivation of a 'significant property interest' protected by the Fifth Amendment, *id*. at 86; and (2) if so, what process is due in the particular circumstances, *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). See *also Ford Motor Credit Co. v. NYC Police Dep't*, 503 F.3d 186, 190 (2d Cir. 2007).

In *Connecticut v Doehr*, 501 US 1, 12 (1991) the Supreme Court held that due process concerns may be triggered by something less than "a complete, physical, or permanent deprivation of real property...[E]ven the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection." *Id.*

Here, under Code §§ SR-17( C) and (F) the Plaintiffs have been permanently deprived of their rights in the respective performance bonds with no right to a due process hearing until the Planning Board makes a "recommendation" for the release to the Town Board. The Planning Board has refused to make such a recommendation until the Plaintiffs comply with an ever-growing list of repairs and maintenance to the improvements which are not the subject of the respective subdivision approvals, stipulations of settlement, subdivision plats, performance bonds, etc. Therefore, the Plaintiffs have been denied their rights in the respective performance bonds without due process of law.

While the lower Court likened this argument to that in *Cunney v. Bd. of Trs. of Grand View*, 56 F. Supp. 3d 470, 497, 500-01, 505 (S.D.N.Y. 2014) but, in that case, local law vested city officials with discretion in determining whether the plaintiff complied with all applicable laws and regulations prior to the issuance of a building permit. This, however, is simply not applicable to the instant case where there is a subdivision approval and a bond which contain specific requirements as to what needs to be completed in order for them to be released. Likewise, there are code sections regarding performance bonds and maintenance bonds confirming that the Town is required to treat them as two entirely different obligations. (See Code §§ 17(F) and 18).

29

*In re Bayswater Gracewood v Planning Bd. of N. Hills*, 19 AD3d 411 (2d Dept 2005) the Court found that a "Planning Board exceeded its authority to the extent that it considered areas not within the scope of the bonds that were the subjects of the petitioner's applications (internal citations omitted) and that the quality of the work must be encompassed by a maintenance bond, not a performance bond.

Strikingly, in *Bayswater* the procedure outlined by the village code met due process requirements because it provided that "[a]ll improvements shall be inspected by the Village Code Official," who "shall make a written report to the [Planning] Board as to the results of such inspection, and the [Planning] Board shall not consider such reduction or release until it has received and considered such report[4]" but did not prevent the plaintiff from enforcing its' right to a due process hearing before the relevant board. Here, instead, random public officials can preclude Plaintiffs from ever having a due process hearing before the Town Board simply by refusing to give their "approval" to the release of the performance bonds for any reason whatsoever, including performing maintenance and repairs under a performance bond which does not provide for same.

---

[4]See North Hills Village Code §150-79 (B), § 150-81 (B).

30

The Defendants relied on *Town of Chester v. Republic Ins. Co.*, 89 AD2d 959, 959-960 (2d Dept. 1982) for the proposition that "New York courts in the Second Department have expressly held that performance bonds can properly cover repairs", yet this case supports Plaintiffs claim that any repairs should be the subject of a maintenance bond.

There is no real dispute that all of the improvements required by the performance bonds (which were not provided as exhibits by Defendants to this motion) have been completed. The punchlists are, instead, an ever increasing list of repairs to previously installed and approved improvements. Plaintiffs' omission of some of the items on the punchlist is irrelevant since "[t]he Court...does not require 'heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bell Atl. Corp. v Twombly*, 550 US 544, 570 (2007).

B.   Extension of Bond Term is Improper and Violative of
     Town Law  § 277(9)

Town Law § 277(9) is clear that, absent an agreement with the developer, a performance bond cannot be extended beyond 3 years. While the Defendants claim that there are even more requirements to the release of the performance bonds that

31

could "justify an extension of the bond term[5]", they fail to grasp that under no circumstances can that extension exceed 3 years pursuant to Town Law § 277(9).

The lower Court concedes that Town Law § 277(9)(e) allows for default proceedings, in this case the Town has failed to commence same so that argument was unavailing. Interestingly, all of the cases relied upon by the lower Court were based upon variance and building permit denials which are simply not germane to the facts in this case. Town Law § 277(9) is clear that, after the expiration of 3 years, and absent an agreement with the developer, a performance bond expires and must be released. The sole remedy available to the Town if the developer does not comply with the requirements of the performance bond within the 3 year period is to declare it in default under Town Law § 277(9)(e) which it did not do.

C. The Performance Bonds are Not Contractual in Nature.

Plaintiffs' claims cannot be couched as "contractual" as the lower Court found. In *Town of Smithtown v Beechwood Tiffany, LLC*, 2012 NY Slip Op 32859[U] (Sup Ct, Suffolk County 2012) the Court held that "[t]he moving defendants' counterclaims against the Town seek the release of the performance bond. Beechwood was required to post a performance bond pursuant to statute (see,

---

[5] Defendants Memorandum of Law at p. 14.

32

Town Law § 277[9][b]; Smithtown Town Code § 248.17 et seq.), and not pursuant to any contract or agreement with the Town."

While the lower Court relied upon *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33 (2d Cir. 2009), that case was based upon a contract claim between general contractors and subcontractors, not between developers and municipalities and are simply not relevant to the instance case. Likewise, *Gizzo v. Ben-Habib*, 44 F.Supp.3d 374 (S.D.N.Y. 2014), also relied upon by the lower Court purportedly for the proposition that the release of a performance bond is a contractual matter and not a constitution right, this is a case about a Licensing Agreement and not a performance bond. The lower Court's reliance on *Martz v Inc. Vil. of Val. Stream*, 22 F3d 26 (2d Cir 1994), where a village attorney sought payment on vouchers, is also simply irrelevant to this fact pattern.

Given that the relevant case law states that the release of performance bonds is not a matter of contract interpretation but is, rather, statutory, the lower Court erred in finding that the Plaintiffs had no constitutionally cognizable rights in the performance bonds based upon this reasoning.

D. Town Code §§SR-17(C) and (F) Are Overbroad and Impermissibly Vague.

Plaintiffs also argued that Code §§SR-17(C) and (F) are impermissibly vague and unconstitutional because they do not provide a reasonable person with a

33

procedure to object to a refusal by the Planning Board and Highway Department to recommend release of the Performance Bonds to the Town Board leaving the Plaintiffs in limbo and effectively extending the Performance Bonds in perpetuity.

In *Joy Bldrs., Inc. v Town of Clarkstown*, 165 AD3d 1084 (2d Dept 2018) the Court held that any provisions not expressly set forth in Code §§SR-17(C) and (F) are *ultra vires* and void. Here, Code §§SR-17(C) and (F) contain requirements which allow for the extension of the Performance Bonds past the three (3) year term set forth in Town Law § 277(9)(d) yet this authority is not contained therein rendering these code sections void.

While the lower Court points to § SR-17( C) for the proposition that the Planning Board could "act" to extend the term of the performance bonds beyond the one year term set forth in that statue, this also is not provided for in Town Law § 277(9) and is, therefore, void.

Moreover, such Board "action" would require a resolution which could only be issued after a hearing and an opportunity for the obligor to be heard. Yet, it is uncontroverted that such Board action did not occur here. Instead, the Town treats the performance bonds as being granted in perpetuity until the Town Board eventually agrees to a hearing on their release. If no such hearing is ever held, the

bonds are not released and the Town considers the developer responsible to continue to make repairs and do maintenance on the improvements forever.

Inasmuch as Code §§SR-17(C) and (F) exceed the statutory grant in Town Law § 277(9)(d) and provides no procedural mechanism to object to the refusal by the Planning Board and Highway Department to approve release of the Performance Bonds, the code is impermissibly vague.

## POINT II

### THE LOWER COURT ERRED IN DISMISSING COUNTS III, V, VI AND VIII WITH PREJUDICE

<u>A. Plaintiffs' § 1983 Procedural Due Process Claim.</u>

The lower Court dismissed with prejudice[6] the Plaintiffs' 42 U.S.C. § 1983 procedural due process claim as "duplicative of plaintiffs' as-applied challenge to the Town's interpretation of the Brookhaven Town Code for allowing the Town to "add work items to plaintiffs' performance bonds and forcing them to continue to do repair work"[7]. For the reasons set forth hereinabove, the lower Court erred in making this determination.

---

[6]The lower Court dismissed without prejudice that portion of the Plaintiffs' Complaint which was an as-applied challenge to provisions of the Code for failure to release the performance bonds was unripe.

[7]See Order at p. 21.

B. Plaintiffs' Substantive Due Process Claims.

To establish a violation of his procedural due process rights, Plaintiff must show that (1) he possessed a protected property interest as defined by state law; (2) he was deprived of that interest under color of law; and (3) this deprivation occurred without due process of law. See *Green v. Town of Blooming Grove*, 879 F.2d 1061, 1064 (2nd Cir.1989). In order to find liability against a municipality in a Section 1983 claim the Plaintiffs must also allege an official policy or custom.

C. Monell Liability.

*Monell v Dept. of Social Servs.*, 436 US 658 (1978) stands for the proposition that municipal corporations are persons who can be sued under the statute when execution of an official government policy or custom inflicted the constitutional violation, but municipal corporations could not be liable under a *respondeat superior* theory. However, here, the Appellants pleaded no claims under a theory of *respondeat superior*. Instead, the Appellants alleged that the actions of the Town which have resulted in constitutional violations were the result of policies put into place by the Town and its' various boards some of which have been codified.

Here, the Complaint sufficiently alleged actions on the part of the Town which are in derogation of the Appellants' constitutional rights and which were

36

affected by official policies of the Town[8]. The Town Defendants acknowledges that there is a policy of refusing to release a performance bond after the expiration of both the 1 year period in SR-17(C) and the 3 year period in Town Law §277(9) when they argue in this case that they have the right to hold performance bonds indefinitely until all of the repairs and maintenance contained in the respective punchlists have been performed.

Likewise, the Town stated in an email on April 12, 2019 that it had a policy of collecting a $500.00 escrow hold-back to "secure the completion of the public improvements" prior to the issuance of a Certificate of Occupancy in a subdivision. Not only is this policy codified at Code § SR-27(1) but Deputy Town Attorney Beth Reilly on April 11, 2019 stated in an email that "I am familiar with this fee and it has been around for a long time".   On April 12, 2019 Ms. Reilly sent a second email stating that the escrow hold-back fee had been increased to $500.00 by a Town Board Resolution.

In refusing to issue Certificates of Occupancy on the last two lots in the Medford Gardens subdivision, on November 20, 2020 Bruce Schaal, Assistant Civil Engineer for the Town of Brookhaven, advised by email that "it is policy to hold the last two lots until all bonded items are complete and the bond release..."

---

[8] ¶¶44-65.

On December 2, 2020 Ms. Reilly reiterated that "we are not changing our policy of two lots..." On January 5, 2021 Isabel Morris of the Planning Department stated in an email that "2 finals will be held on Watch Hill and/or Candice Court until all public improvements have been completed to the satisfaction of all departments".

In *Joy Bldrs., Inc. v Town of Clarkstown*, 165 AD3d 1084 (2d Dept 2018), where that Town similarly held back building permits until public improvements had been completed, the Court held that "a plain reading of Town Law § 277 establishes that (1) it has no express provision authorizing the Lot Holdback Provision set forth Town Code § 254-18B, (2) pursuant to the rules of statutory construction, the express provisions of Town Law § 277 must be construed to exclude provisions such as those in Town Code § 254-18B which are not contained in section 277 (see *Walker v Town of Hempstead*, 84 NY2d 360, 367 [1994]), and (3) it has no provision from which the Lot Holdback Provision of Town Code § 254-18B can be implied [internal citations omitted]. Thus, Town Code § 254-18B is inconsistent with the plain language of Town Law § 277 (9), which expressly sets forth the manner in which a developer can be required to provide financial security to ensure the completion of the installation of required infrastructure and other mandatory improvements. When a town or municipality acts without legislative delegation, its acts are *ultra vires* and void *ab initio* (see *Matter of*

38

*Golden v Planning Bd. of Town of Ramapo*, 30 NY2d 359, 369 [1972]). Since Town Law § 277 does not authorize the Town to impose the Lot Holdback Provision set forth in Town Code § 254-18B, the provision is *ultra vires* and void as a matter of law (see *Town of Huntington v Beechwood Carmen Bldg. Corp.*, 82 AD3d 1203, 1206 [2d Dept 2011]; *BLF Assoc., LLC v Town of Hempstead*, 59 AD3d 51 [2d Dept. 2008]).

Here, similarly, the Town's policy of holding back 2 certificates of occupancy to the detriment of the Plaintiffs without due process establishes a due process violation against the Defendants. While the Defendants try to minimize this due process violation by claiming that it was only in effect for several months, this in no way precludes a finding that the Defendants did, in fact, violate Plaintiffs' due process rights. The Plaintiffs had a legitimate claim of entitlement to these certificates of occupancy since, once the lot holdback policy was rescinded, said certificates were issued. There was no discretion involved in issuing these certificates and the only reason for holding them back was the alleged failure of the Plaintiffs to install all of the public improvements required by the subdivision approvals.

While the Defendants claim that *Sandy Hollow Assoc. Llc & Port N. Constr. LLC v Inc. Vil. of Port Washington N.*, 2010 US Dist LEXIS 142396 [EDNY Sep.

39

6, 2010, No. CV 09-2629 (SJF) (AKT) stands for the proposition that there is no constitutionally protected property interest in a CO, this is an improper reading of the holding in that case. In that case the court specifically found that there was not a right to the CO because the Plaintiff conceded that it had not posted a performance bond for the public improvements which was required under both the Village Code and the Planning Board resolution, the building permits had expired and no final surveys had been submitted. This is clearly not the case here where the facts are the opposite of those which the Court found determinative of the issue of whether Sandy Hollow had a vested interest in the issuance of the COs.

### D. *Monell* is Not Applicable to the Appellants' Claims

As previously set forth hereinabove, it is the Planning Board's policy to require that performance bonds be posted in perpetuity until a developer meets their definition of "satisfactory completion". In fact, the Planning Board baldly stated in the Medford Gardens Section I conditional final approval dated May 24, 2010 that the performance bond would "run for a term ending upon the Town's determination of 'satisfactory' completion'" despite the requirements of Town Law § 277(9) and SR-17(C). Likewise the Quigley Estates Performance Bond (which was not provided by the Defendants in connection with this motion) while lacking

a term, stated that "which improvements shall be completed to the satisfaction of the Town of Brookhaven" prior to the release of the performance bond.

The CO monetary escrow is, likewise, codified as acknowledged by the Deputy Town Attorney. The Planning Department also acknowledged in writing that the CO holdback provision was a policy of the Town. Since the Amended Complaint alleges actual Town policies or practices, *Monell* is not invoked.

The Defendants also argue that, because the Amended Complaint "does not reference a single person at all" it is somehow deficient under *Whalen v. Cty. of Fulton*, 126 F.3d 400 (2d Cir. 1997). Yet, *Monell* made clear that municipal corporations were persons who could be sued under the statute when execution of an official government policy or custom inflicted the constitutional violation.

## POINT III

### THE LOWER COURT ERRED IN DISMISSING APPELLANTS' EQUAL PROTECTION CLAIM UNDER *MONELL*

The lower Court dismissed with prejudice those portions of Appellants' 42 U.S.C. § 1983 equal protection claims under *Monell*. For the reasons set forth hereinabove, the lower Court erred in making this determination.

41

## POINT IV

## THE LOWER COURT ERRED IN DISMISSING APPELLANTS' FIRST AMENDMENT RETALIATION CLAIMS UNDER *MONELL*

The lower Court dismissed with prejudice those portions of Appellants' 42 U.S.C. § 1983 first amendment retaliation claims related to the Town's delayed issuance of the certificates of occupancy under *Monell*. For the reasons set forth hereinabove, the lower Court erred in making this determination.

## POINT V

## GRAND MEDFORD PROPERLY PLEAD A CLAIM THAT CHAPTER 81 OF THE TOWN CODE IS UNCONSTITUTIONAL

Here, the Amended Complaint alleged that a low level employee of the Town of Brookhaven made an inspection of Lot 26 and determined that it had become "wetlands" without any due process hearing being afforded to Grand Medford. While there is an eminent domain proceeding pending, that determines only the value of Lot 26 and not whether it was improperly designated as "wetlands".

Likewise, the hearing before the Town Board determined only whether "the proposed acquisition in condemnation is to further public use and is in public interest". *Rodrigues v Beekman*, 120 A.D.2d 724 (2d Dep't 1986), *dismissed*, 69 N.Y.2d (1987). The Defendants have failed to provide any document to establish

42

that the determination that Lot 26 was "wetlands" had been made at the hearing before the Town Board or that the Plaintiff was afforded a due process hearing on this designation.

Grand Medford could not have demanded a notice and opportunity to be heard pursuant to NYS EDPL § 207 as that procedure is appellate in nature and would only review the condemnation order. The underlying determination that the subject property was wetlands was done internally within the Town and was not subject to court review. In doing so, "the Town has failed to comply with the requirements of the [NYS] ECL §24-0301(4) and (5) which requires notice and a public hearing before any designation can be made that a property contains wetlands.

The lower Court concedes that the eminent domain proceedings were instituted "*because* [the Town] determined that the lot is a protected wetland". The lower Court failed to grasp Grand Medford's argument that this designation was made prior to any hearing before the Town Board. When the Town Board hearing occurred Lot 26 had already been designated wetlands without any notice or opportunity to be heard to Grand Medford. The sole issue before the Town Board at the hearing was whethr an eminent domain proceeding would be commenced, not whether Lot 26 wase wetlands. For the purpose of this application Grand

Medford does not dispute that, if Lot 26 is wetlands, the Town has the right to take such property through eminent domain for a public purpose. Grand Medford objects to the fact that the wetlands designation was made administratively without a due process hearing as is required.

## POINT VI

## LEAVE TO REPLEAD

A party may amend its pleading by leave of the court. Fed. R. Civ. P. 15(a). The "court should freely give leave when justice so requires," *id.*, and it is the usual practice upon granting a motion to dismiss to allow leave to replead. *Cruz v TD Bank, N.A.*, 742 F3d 520 (2d Cir 2013) citing *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 50 (2d Cir. 1991).

In *Cruz*, the plaintiffs in that case requested an opportunity to replead their claims in a manner consistent with the Court's decision. Inasmuch as Appellants could not have known the contents of the Court's dismissal decision, it would be an impossibility to require them to have submitted a proposed amendment to the Complaint based upon the contents of such an order. Like *Cruz*, the Appellants should have been granted leave to replead since the lower court found that there were sufficient facts set forth in the motion to dismiss to support the Appellants claims which it found to be lacking.

44

Contrary to the lower Court's finding that *Corsini v Nast*, 613 F App'x 1 (2d Cir 2015) stood for the proposition that a request for leave to amend should be denied if a plaintiff does not submit a proposed amended pleading, in that case the Court made a fact specific determination

In *Goney v SuttonPark Capital LLC*, 2021 U.S. App. LEXIS 32562 (2d Cir Nov. 2, 2021, Nos. 21-188, 21-1101) the Court held that "[we] have also explained that 'the lack of a formal motion is not sufficient ground for a district court's dismissal without leave to amend, so long as the plaintiff has made its willingness to amend clear," *McLaughlin v. Anderson*, 962 F.2d 187, 195 (2d Cir. 1992), and we have held that a district court abuses its discretion when it ignores such a request and provides no reason for the denial. For example, in *Oliver Schools, Inc. v. Foley*, the request was "easily inferable from counsel's statement to the court" that a fatal pleading defect "could be taken care of" and the plaintiff's desire to amend "was hardly a surprise to the defendants." 930 F.2d 248, 253 (2d Cir. 1991). We therefore concluded that the district court should have granted leave to amend."

Here, similarly, the Court should have granted leave to amend those portions of the Complaint which it dismissed with prejudice.

45

CONCLUSION

By reason of the foregoing, it was error for the District Court to dismiss the Complaint.

This Court should issue an Order reinstating the Complaint or, in the alternative, grant Appellants leave to amend the Complaint.

Dated: Nesconset, New York
April 12, 2024

Respectfully submitted,
SCHEYER & STERN, LLC
By: /s/ Fredrick P. Stern
Fredrick P. Stern, Esq.
Attorneys for Plaintiffs-Appellants
120 Lake Avenue So., Suite 27
Nesconset, New York 11767
Phone: (631) 265-8500

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 10,228 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I hereby certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), the typestyle requirements of Fed. R. App. P. 32(a)(6), and the form requirements of Fed. R. App. P. 32(c)(2), because the brief has been prepared using Microsoft Word 2010 in 14-point Times New Roman font.

Dated: Nesconset, New York
      April 12, 2024

                SCHEYER & STERN, LLC
                By: /s/ Fredrick P. Stern
                Fredrick P. Stern, Esq.
                Attorneys for Plaintiffs-Appellants
                120 Lake Avenue So., Suite 27
                Nesconset, New York 11767
                Phone: (631) 265-8500

## SPECIAL APPENDIX

| | Page |
|---|---|
| Opinion & Order of the United States District Court (Ross, Arlene R.) dated January 17, 2024 [Docket No. 23] | 1 |
| Town Code of the Town of Brookhaven §SR-17(C) | 45 |
| Town Code of the Town of Brookhaven §SR-17(F) | 45 |
| Town Code of the Town of Brookhaven §SR-18 | 46 |
| Town Code of the Town of Brookhaven § SR-27(1) | 47 |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GRAND MEDFORD ESTATES, LLC and SCHEYER COURT, LLC, | 22-CV-7834 (ARR) (ARL) |
| *Plaintiffs*, | |
| -against- | **OPINION & ORDER** |
| THE TOWN OF BROOKHAVEN, THE TOWN BOARD OF THE TOWN OF BROOKHAVEN and THE PLANNING BOARD OF THE TOWN OF BROOKHAVEN | |
| *Defendants*. | |

ROSS, United States District Judge:

Defendants the Town of Brookhaven, the Town Board of the Town of Brookhaven, and the Planning Board of the Town of Brookhaven move to dismiss the Amended Complaint of plaintiffs Grand Medford Estates, LLC and Scheyer Court, LLC in its entirety. For the reasons set forth below, I grant defendants' motion.

## BACKGROUND[1]

This case concerns a dispute between two developers and a township over the latter's actions disrupting the developers' subdivision developments. Chief among these actions is the town's alleged refusal to release bonds whose conditions the developers assert they have satisfied.

### Grand Medford

Developer Grand Medford, or its predecessor in interest, has been working with the Town of Brookhaven since at least 1998 to develop the Grand Medford Gardens subdivision (also

---

[1] "In recounting the background to this case, [I] follow the standard applicable to judicial review of motions to dismiss, *i.e.*, [I] accept all factual allegations in the plaintiffs' amended complaint as true, and [I] consider that pleading . . . in the light most favorable to plaintiffs." *Melendez v. City of New York*, 16 F.4th 992, 996 (2d Cir. 2021).

referred to as the "Medford Estates subdivision"). Am. Compl. ¶ 12–13, ECF No. 10. Throughout this time, Grand Medford has filed several actions in New York State court, including under C.P.L.R. Article 78, a state law vehicle for challenging agency action. *Id.* ¶¶ 15, 27; *see* N.Y. C.P.L.R. § 7803. These actions have attempted to, for example, ensure that defendants act consistent with the "concept of due process" and make approvals necessary for subdivision development. Am. Compl. ¶¶ 15, 18, 27. In 2010, the Planning Board issued "conditional final approval" for the Medford Gardens subdivision, which required Grand Medford to post a $541,000 performance bond or, in lieu of a performance bond, cash. *Id.* ¶¶ 19, 22, 24. Under the performance bond, Grand Medford had to complete certain work to warrant its release, including tree planting, fencing, and other construction. *Id.* ¶¶ 24, 25a–b, 26a. In addition to the performance bond, "as a prerequisite to constructing the Medford Gardens subdivision," Brookhaven required that Grand Medford "post a $680,000.00 highway bond to guarantee completion of off-site improvements to . . . a public highway." *Id.* ¶ 28. To comply with this requirement, Grand Medford posted a $680,000 cash deposit. *Id.* ¶ 29. In 2018, once Grand Medford completed the highway bond work, Brookhaven converted this highway bond to "cash security in lieu of a performance bond to ensure the completion of . . . public improvements for the [Medford Gardens] subdivision." *Id.* ¶ 30. Defendants are still holding the $680,000 as a performance bond. *Id.* ¶ 34. In addition to cash for the performance bond, in 2019 defendants required Grand Medford to post two "separate $500 supplemental bonds" to secure "[c]ertificates of [o]ccupancy for the completed single family homes in the Medford Estates Subdivision." *Id.* ¶ 36. Later, in February 2020, Grand Medford had to deposit $1,800 "as supplemental bonding" for additional lots in the subdivision. *Id.* ¶¶ 38–39 .

Grand Medford alleges that in July 2020, it completed "the improvements required by the performance bond" and, subsequently, "demanded" the bond's release. *Id.* ¶¶ 40–41. Grand

Medford "demanded the release of the [p]erformance [b]ond" again in September 2020 and for a third time in October 2020. *Id.* ¶¶ 42, 76. Defendants have refused Grand Medford's multiple demands for release of the performance bond. *Id.* ¶ 10. Grand Medford alleges that defendants have delayed the release of its performance bond by concocting several false and unlawful requirements that they assert Grand Medford must complete before they release it from the performance bond.

First, Grand Medford alleges that between January and September 2020, defendants "denied final approvals for [five] single family dwellings based upon the erroneous claim that" the lots' driveways were not in compliance with the Stormwater Pollution Prevention Plan ("SWPPP"), even though defendants had previously granted Grand Medford a waiver exempting it from the SWPPP requirements. *Id.* ¶ 44. These requirements stopped Grand Medford from "receiving a return on its investment[s]" and prevented it from "closing on the property transactions." *Id.* ¶ 48. In addition, the SWPPP requirements delayed Grand Medford's release from the performance bond. *Id.* ¶ 46. Ultimately, defendants acknowledged that Grand Medford had a SWPPP waiver and "eliminated the requirement." *Id.* ¶ 49.

Grand Medford alleges that defendants further unlawfully delayed release of the performance bond by requiring it to first complete "hundreds of thousands of dollars" of additional maintenance work—referred to as the punchlist items—which was not originally a condition of the performance bond or the conditional final approval. *Id.* ¶¶ 81–82. These punchlist items, Grand Medford contends, have transformed the developer into a "maintenance contractor for the roads contained in the [subdivision]," even though the bonds are "performance bonds" and not "repair [or maintenance] bonds." *Id.* ¶ 90.

In addition to the delayed release of the performance bond, Grand Medford also contends

that in November 2020, the Town refused to issue the "certificates of occupancy for the last [two]

single family dwellings," even though the homes were built and in contract with potential buyers.

*Id.* ¶¶ 53, 56.  Grand Medford alleges that defendants refused to issue the certificates of occupancy

until "Planning Department staff issued final approval for the release of the performance bond."

*Id.* ¶ 53. By withholding these two certificates of occupancy, defendants effectively "sei[zed] over

$1,000,000 of capital which was tied up in these two homes," and even further delayed release of

the performance bond. *Id.* ¶¶ 53–56. Plaintiffs further allege that the "Commissioner of the

Planning Department"—not a party to this lawsuit—warned that if Grand Medford threatened to

sue over the release of the two certificates of occupancy, their release would be even further

delayed. *Id.* ¶ 62. Ultimately, in January 2021, "the Planning Department advised Grand Medford

that the [c]ertificates of [o]ccupancy 'are no longer on hold.'" *Id.* ¶ 65. Although defendants

authorized release of the hold in early January, the two certificates of occupancy were not actually

released until April 2021 due to administrative delay. *Id.* ¶¶ 66–69.

Lastly, Grand Medford alleges that defendants have unlawfully deemed Lot 26—a parcel

of land in the Medford Gardens subdivision—as a protected wetland under Brookhaven Town

Code section 81-3 (2011). *Id.* ¶ 71. Defendants are currently engaged in eminent domain

proceedings related to Lot 26. *Id.* ¶¶ 71–72; *see also* Defs.' Mot. Dismiss Exs. 7–11 ("Defs.'

Mot."), ECF Nos. 17-9–17-13 (eminent domain documents and filings).[2] Grand Medford has filed

a notice of claim in state court seeking compensation for the Town's acquisition of Lot 26. *Id.* Ex.

11, ECF No. 17-13; *see also* Am. Compl. ¶ 73.

***Scheyer Court***

---

[2] I take judicial notice of all exhibits related to the eminent domain proceedings. *See infra*
Discussion Section II.

Similar to Grand Medford, Scheyer Court or its predecessor in interest has been working with defendants since 2011 to develop a subdivision called Quigley Estates. Am. Compl. ¶¶ 97–131. The Planning Board issued conditional final subdivision approval of the Quigley Estates subdivision in October 2014. *Id.* ¶ 107. To ensure the "construction of the improvements outlined in the conditional final approval," the Planning Department determined that Scheyer Court needed to post an $845,000 performance bond. *Id.* ¶ 108. Between December 2019 and November 2020, Scheyer Court partially completed the improvements, and as a result, the Planning Department decreased the performance bond Scheyer Court was required to post to $508,348.50. *Id.* ¶ 109–11. After further dispute from Scheyer Court, the Planning Department reduced the performance bond again in January 2021 to $460,428.50. *Id.* ¶¶ 112–13. Scheyer Court originally posted "a cash performance bond" for $460,428.50, but in April 2021 defendants converted it to a surety performance bond and refunded the cash to Scheyer Court. *Id.* ¶ 113. Scheyer Court alleges that it completed all the necessary improvements and, in September 2022, "demanded release of the performance bond." *Id.* ¶ 116–17. After Scheyer Court made a second demand for release of the performance bond, "the Planning Department advised Scheyer Court that it was refusing to recommend release of the [p]erformance bond" until it completed further maintenance and work items listed in a punchlist, most of which, it alleges, were not requirements of the original performance bond. *Id.* ¶¶ 117–121, 127. In February 2023, Scheyer Court was forced to pay a "renewal premium of $13,813.00" for the Quigley Estates performance bond. *Id.* ¶ 166.

***Claims***

Plaintiffs have brought several constitutional claims against defendants based on defendants' refusal to release the performance bonds and their designation of Lot 26 as protected wetlands. In Count I, plaintiffs bring an as-applied due process challenge to Brookhaven Town

5

SPA-5

Code sections SR-17(C) and (F). *Id.* ¶¶ 132–54. In Count II, plaintiffs also argue that New York State Town Law preempts those sections of the Brookhaven Town Code. *Id.* ¶¶ 155–62. In Counts III and VIII, plaintiffs bring procedural and substantive Due Process Clause claims against defendants under 42 U.S.C. § 1983. *Id.* ¶¶ 163–74 (procedural due process); *id.* ¶¶ 241–54 (substantive due process). In Count IV, Grand Medford alleges that "Chapter 81 of the Town Code" violates their procedural and substantive due process rights. *Id.* ¶¶ 194, 200.  In Counts V and VI, plaintiffs bring § 1983 Equal Protection Clause claims against the Town, under theories of selective enforcement and class of one. *Id.* ¶¶ 202–17. In Count VII, Grand Medford brings a § 1983 Takings Clause claim against defendants. *Id.* ¶¶ 218–40. Finally, in Count IX, plaintiffs allege that defendants' actions constitute unlawful retaliation for plaintiffs' exercise of their First Amendment rights. *Id.* ¶¶ 255–76.

## LEGAL STANDARD

### I.   Motion to Dismiss

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), I must "accept all factual allegations as true" and "draw all reasonable inferences in favor of the plaintiff[]." *Melendez*, 16 F.4th at 1010 (quotation omitted). A claim is sufficiently plausible to withstand a motion to dismiss when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a claim has facial plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"On a 12(b)(6) motion to dismiss, [I] must limit [my] 'consideration to facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference.'" *L. Prac. Mgmt. Consultants, LLC v. M&A Couns. & Fiduciaries, LLC*, 599 F. Supp. 2d 355, 358 (E.D.N.Y. 2009) (quoting *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005)). Even if a document is not attached to the complaint or incorporated by reference, Federal Rule of Evidence 201 permits me to take judicial notice of, *inter alia*, facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Documents I may judicially notice include filings in other courts. *See, e.g., Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts.").

## II.   Ripeness

Ripeness doctrine is "rooted in both Article III's case or controversy requirement and prudential limitations on the exercise of judicial authority." *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005). Its purpose is to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs v. Gardner*, 387 U.S. 136, 148 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 97 (1977). Building on this rationale, the Supreme Court has articulated specific ripeness requirements that apply to land use disputes. *See generally Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985), *overruled in part by Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019). Federal courts have developed these requirements for constitutional land use disputes to avoid "becom[ing] zoning boards of appeal" and because land use controversies are "matters of local concern." *Vill. Green at Sayville, LLC v. Town of Islip*, 43 F.4th 287, 293 (2d Cir. 2022) (quotation marks omitted).

A plaintiff making a constitutional land use claim in federal court must "show that [] the state regulatory entity has rendered a 'final decision' on the matter." *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (quoting *Williamson Cnty.*, 473 U.S. at 186). By requiring that a plaintiff first try to obtain relief from bodies other than the federal judiciary, the final decision rule promotes federalism and enforces the principle that, whenever possible, "disputes should be decided on non-constitutional grounds." *Murphy*, 402 F.3d at 348 (explaining that the final decision requirement "evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution"). The rule also ensures that federal courts resolving land use disputes have both a full factual record and clarity as to how the land use regulation applies to the property at issue. *See id.*

Although the final decision requirement has been interpreted as conditioning "federal review on a property owner submitting at least one meaningful application for a variance," this is not a strict requirement. *Id.* at 348 (citing *Williamson Cnty.*, 473 U.S. at 190). In fact, the Supreme Court has cautioned against mechanical application of the finality rule, requiring only that a plaintiff show "de facto finality," or that "the government is committed to a position." *Pakdel v. City and Cnty. of San Francisco*, 141 S. Ct. 2226, 2230 (2021). If, however, "avenues still remain for the government to clarify or change its decision," a claim may be unripe. *Id.* at 2231.

There are exceptions to the finality requirement. If a property owner can show that a zoning agency "has dug in its heels and made clear that all . . . applications [for variances] will be denied," then a property owner's failure to seek further review will be excused as futile. *Sayville*, 43 F.4th at 294. Likewise, a plaintiff need not seek a final decision if local authorities are manipulating "a zoning process out of discriminatory animus to avoid a final decision." *Id.* (quotation marks omitted).

Although the land use ripeness doctrine evolved in the context of Fifth Amendment takings claims, courts have applied these requirements to other claims in cases involving land use disputes. Specifically, courts in the Second Circuit have applied the final decision requirement to land use disputes involving First Amendment claims, *see Murphy*, 402 F.3d at 350–54, equal protection claims, *see Dean v. Town of Hempstead*, 163 F. Supp. 3d 59, 78 (E.D.N.Y. 2016), substantive due process claims, *see Southview Assocs., Ltd. v. Bongartz*, 980 F.2d 84, 96–97 (2d Cir. 1992), and procedural due process claims, *see Kurtz v. Verizon New York, Inc.*, 758 F.3d 506, 516 (2d. Cir. 2014). Whether the final decision requirement applies to non-takings claims turns on the factual relationship between the non-takings and takings claims. If a plaintiff has not experienced "some injury independent of the challenged land-use decision," *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 123 (2d. Cir. 2014), and the non-takings claim arises "from the same nucleus of facts as a takings claim," *Kurtz*, 758 F.3d at 515, then the final decision ripeness requirement applies. A complaint, including "the way in which [plaintiffs] have framed the allegations" and the injury alleged, can be helpful tools in determining whether the alleged constitutional violations caused immediate injuries independent of the takings harm. *Adrian v. Town of Yorktown*, No. 03-CV-6604 (MDF), 2007 WL 1467417, at *6 (S.D.N.Y May 16, 2007).

## III.    Due Process

Deciding whether a plaintiff has been deprived of property in violation of either the Procedural or Substantive Due Process Clause involves a two-part test. First, I must determine if a "constitutionally cognizable property interest is at stake." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995). A plaintiff must demonstrate more than "an abstract need or desire for" the matter at issue to show a protected interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Instead, "[t]o establish a constitutionally cognizable property interest, plaintiffs

must demonstrate a clear entitlement to the benefit in question." *Panetta v. Vill. of Mamaroneck*, No. 11-CV-4027 (VB), 2012 WL 5992168, at *3 (S.D.N.Y. Feb. 28, 2012). A clear claim of entitlement may be one "created and . . . defined by existing rules or understandings that stem from an independent source," such as state law or a contract. *Bd. of Regents*, 408 U.S. at 577–78. Also relevant is whether "the local authority has discretion to deny what is sought or, in the alternative, whether relief must be granted based upon objectively ascertainable criteria." *Vertical Broad., Inc. v. Town of Southampton*, 84 F. Supp. 2d 379, 391 (E.D.N.Y. 2000). If the local authority has discretion to deny what is sought, it is more likely that the plaintiff lacks a protectable property interest in it. *Id.* at 391–92.

"[A]lthough a public contract can confer a [constitutionally] protectible benefit, not every contract does so." *Martz v. Incorp. Vill. of Valley Stream*, 22 F.3d 26, 30 (2d Cir. 1994). In fact, "the type of interest a person has in the enforcement of an ordinary commercial contract often is qualitatively different from the interests the Supreme Court has thus far viewed as a property entitled to procedural due process protection." *Id.* (quotation marks omitted). For an interest in a contract to create a clear entitlement to property protectable by the Due Process Clause, the interest must be associated with a "cognizable status of the claimant beyond its temporary role as a governmental contractor." *S & D Maint. Co. v. Goldin*, 844 F.2d 962, 967 (2d Cir. 1988). For example, the Supreme Court has found that claimants have a property interest in a contract when the state's violation of the contract resulted in a revocation of a claimant's welfare benefits, *see generally Matthews. v. Eldridge*, 424 U.S. 319 (1976), or an elimination of a claimant's tenured status in public employment, *see generally Bd. of Regents*, 408 U.S. 564.

If a property interest exists, for the procedural due process claim I must ask "whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S.

216, 219 (2011). For a substantive due process claim, on the other hand, I must ask whether the government conduct depriving the plaintiff of a property interest is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).

A law may also violate the Due Process Clause if it is vague. *Farrell v. Burke*, 449 F.3d 470, 484–85 (2d Cir. 2006). There are two grounds on which a law may be unconstitutionally vague. First, a law is unconstitutionally vague if it "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). This principle is animated by the "constitutional principle that individuals should receive fair notice or warning" about what a law requires. *Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007). Second, a law violates the vagueness due process principle if it "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill*, 530 U.S. at 732. As long as a law provides "sufficiently clear standards to eliminate the risk of arbitrary enforcement," it will not be unconstitutionally vague under the second vagueness principle. *Farrell*, 449 F.3d at 494.

## IV.   *Monell* Claim

To state a 42 U.S.C. § 1983 claim against a municipality, a plaintiff must plead three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Lucente v. Cnty. of Suffok*, 980 F.3d 284, 297 (2d Cir. 2020) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)). A plaintiff may plead the existence of an official policy or custom by alleging the existence of a "formal policy which is officially endorsed by the municipality." *Calicchio v. Sachem Cent. Sch. Dist.*, 185 F. Supp. 3d 303, 311 (E.D.N.Y. 2016). Even if there is not an explicitly adopted official policy, a plaintiff may establish that such a policy or custom exists by alleging "practices so persistent and widespread [that they]

practically have the force of law," *Lucente*, 980 F.3d at 297 (quotation marks omitted); if, however,

a pleading articulates "only isolated instances of unconstitutional behavior," a plaintiff will not

have plausibly alleged municipal liability, *Douglas v. City of Peekskill*, No. 21-CV-10644 (KMK),

2023 WL 2632217, at *9 (S.D.N.Y. March 24, 2023) (quotation marks omitted). "[T]he decisions

of a government's lawmakers [or] the acts of its policymaking officials" may also constitute an

official policy or custom. *Lucente*, 980 F.3d at 297 (quoting *Connick v. Thompson*, 563 U.S. 51,

61 (2011)).  For the acts of a policymaker to constitute an official policy, the plaintiff must allege

that the policymaker has "final authority to establish municipal policy with respect to the action

ordered." *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) (quoting *Pembaur v. City of Cinicinnati*,

475 U.S. 469, 481 (1986) (plurality op.)).

## DISCUSSION

### I.   Proper Defendants

Defendants correctly argue that because the Town Board and Planning Board are "agencies

of a municipality" and lack "a legal identity separate and apart from the municipality," they are

not suable entities. Defs.' Reply 20–21, ECF No. 21 (quoting *MetroPCS New York, LLC v. City of

Mount Vernon*, 739 F. Supp. 2d 409, 419 (S.D.N.Y. 2010)); *see also T-Mobile Ne. LLC v. Town

of Ramapo*, 701 F. Supp. 2d 446, 463 n.5 (S.D.N.Y. 2009) (explaining that "the Town, not the

Town's agencies or boards, [including, for example, the Town's] Planning Board," is the "proper

defendant in this case"). Because the Town Board and Planning Board are non-suable entities and

no amendment to the pleadings could change this, I dismiss all claims against these entities with

prejudice. *See AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.,* 626 F.3d 699, 725 (2d Cir.

2010) ("Reasons for a proper denial of leave to amend include . . . futility of amendment." (quotation

omitted)). All subsequent discussion of a singular "defendant" refers to the Town of Brookhaven itself.

## II.    Material not in the Amended Complaint

To support its motion to dismiss, defendant appended several exhibits. According to the Town, exhibits one through six are documents related to the Grand Medford Estates and Quigley Estates performance bonds, including copies of the conditional final approvals and the punchlists for both subdivisions. *See* Defs.' Mot. Decl. Lisa Perillo, ECF No. 17-1. Exhibits seven through eleven all relate to the New York State eminent domain proceedings. *Id.*

I decline to determine whether I may take judicial notice of exhibits one through six as the documents are not necessary to my analysis, and so I do not rely on them. *See Tomasino v. Estee Lauder Cos.*, No. 13-CV-4692 (ERK) (RML), 2015 WL 1470177, at *6 (E.D.N.Y. March 31, 2015) ("It is not necessary to determine whether I may properly take judicial notice of Exhibits . . . because I find them unhelpful in considering the present case and so do not rely on them."). I do, however, take judicial notice of exhibits seven through eleven, which relate to the eminent domain proceedings. Exhibits eight through eleven were filed with the Supreme Court of New York in Suffolk County as part of the Town's eminent domain proceedings related to Lot 26. *See* Defs.' Mot. Ex. 8, ECF No. 17-10 (amended verified petition); *id.* Ex. 9, ECF No. 17-11 (vesting order); *id.* Ex. 10, ECF No. 17-12 (notice of acquisition); *id.* Ex. 11, ECF No. 17-13 (notice of claim). I may take judicial notice of these exhibits because they are court filings related to the claims Grand Medford brings in this case. *See Reyes v. Fairfield Props*, 661 F. Supp. 2d 249, 255 n.1 (E.D.N.Y. 2009) ("It is well-settled that . . . the Court is entitled to take judicial notice of . . . documents filed in other courts and other public records."). I may also take judicial notice of exhibit seven, the meeting minutes from the March 11, 2021 Town Board Meeting at which the board decided to condemn Lot 26. *See* Defs. Mot. Ex. 7, at 80–84, ECF No. 17-9; *see also Quick Cash of Westchester Ave. LLC, v. Vill. of Port Chester*, No. 11-CV-5608, 2013 WL 135216, at *4

(S.D.N.Y. Jan. 10, 2013) (taking judicial notice of Village Board meeting minutes because they "are public documents").

## III.    Grand Medford's Takings Claim[3]

Grand Medford alleges that by conditioning the release of its performance bond on its completion of maintenance and repair items listed in the punchlist, the Town has effectively taken, without just compensation, the $680,000 in cash it posted as the performance bond. Am. Compl. ¶¶ 218–40. The Town argues, on the other hand, that I should dismiss Grand Medford's takings claim as unripe and for failing to state a claim. Defs.' Mot. 7–11 (ripeness); *id.* at 35–36 (failing to state a claim). As the Town argues, this claim is not ripe.[4]

The Town's decision to issue the Medford Gardens Punchlist is the only final decision that plaintiffs explicitly allege the Town has made. *See* Am. Compl. ¶ 93 ("The Medford Gardens Punchlist amounts to a final administrative determination under relevant New York State law."). Grand Medford fails to explain, however, how this amounts to a final decision regarding the release of the performance bond. Instead, as Grand Medford acknowledges, the punchlist items are conditions it must meet to warrant the performance bond's release. Am. Compl. ¶ 82. The punchlist

---

[3] In the section of their Amended Complaint describing the Takings Clause violation, plaintiffs do not allege that any of the Town's actions with respect to Scheyer Court's performance bond constituted a taking. Am. Compl. ¶¶ 218–40. Plaintiffs do, however, cite to facts related to Scheyer Court in other portions of the Amended Complaint alleging other constitutional violations, suggesting that had they intended to allege that Scheyer Court experienced a taking, they would have included such facts in the takings portion of the Amended Complaint. *See, e.g., id.,* ¶ 166 (explaining, in the portion of the Amended Complaint alleging a § 1983 procedural due process claim, that Scheyer Court has a "cognizable property interest" in the $13,813 renewal premium.) Plaintiffs also fail to allege that any of the Town's actions constituted a taking of Scheyer Court's property in the facts portion of the Amended Complaint. *Id.* ¶¶ 97–131 (describing the facts related to Quigley Estates and Scheyer Court). As a result, I do not read plaintiffs' Amended Complaint as alleging that Scheyer Court experienced an unconstitutional taking.

[4] The final decision ripeness requirement applies to Fifth Amendment takings claims. *See Dougherty*, 282 F.3d at 88, *abrogated on other grounds by Knick*, 139 S. Ct. 2162.

itself is not a final decision.

In fact, the Town has not yet issued a final decision on the release of Grand Medford's performance bond. Under Brookhaven Town Code section SR-17(F), for the Town to release a developer from a performance bond, the Planning Board must first recommend "to the Town Board the release of the performance bond." Town Code § SR-17(F). Only once the Town Board receives this recommendation, may it, along with the Highway Department, make the final decision to release a developer from a performance bond. *Id.* The Planning Board has not yet recommended that the Town Board release the performance bonds, and so the Town Board has not even begun the process of making a final decision on the matter. Pls. Opp'n Defs.' Mot. Dismiss 11 ("Opp'n"), ECF No. 19. To the extent that Grand Medford is challenging the Planning Board's refusal to recommend release of its performance bond, this is also not a final decision that could render its takings claim ripe. The Planning Board only has the authority to *recommend*, not authorize, the bond's release. *Cf. Cofran v. Bd. of Trustees of the N.Y. City Pension Fund*, 46 F.3d 3, 4 (2d. Cir. 1994) (determining that the plaintiff's due process claim challenging a city board's anticipated decision to involuntarily retire him "on the basis of a psychiatric disability" was not ripe because: (1) at the time that the plaintiff brought the challenge, the city board had yet to make a final decision and; (2) a medical board's recommendation to the city board that the plaintiff be dismissed was not a sufficient final decision). Grand Medford also acknowledges that the Town has yet to make a final decision when it points out that a New York State C.P.L.R. Article 78 proceeding on the release of its performance bond would not be ripe for the same reason. Opp'n 23–25.

Further, Grand Medford fails to allege that it has properly requested that the Planning Board make a recommendation to release it from the performance bond. Under the Brookhaven Town Code, to request release of a performance bond, subdividers must submit to the Planning

Board a letter requesting such release, "as-built plans" showing "locations, profiles and elevations of roads, curbs, sidewalks, drainage and other structures," "properly executed instruments of dedication," and a "certificate of title." Town Code §§ SR-17(D)–(F) (1990). Although Grand Medford argues that "the Town Board will not entertain an application by [it] to release the Performance Bond without a recommendation from the Planning Department," Am. Compl. ¶ 80, Grand Medford does not allege that it has submitted the required materials to the Planning Board which would warrant such a recommendation in the first place. *See generally id*. Instead, Grand Medford simply alleges that it has "performed all of [its] obligations required by the respective Performance Bonds, including [a long list of work items]," and that it has "demanded the release of the Performance Bond." *Id*. ¶¶ 8, 41–42, 76. Even if the Planning Board's failure to recommend release of the performance bond could be a final decision, the fact that Grand Medford has failed to allege that it has submitted all the required materials to request such a release further supports that its takings claim is not ripe. *See Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 599–600 (S.D.N.Y. 2013) (determining that there was no final decision for ripeness inquiry purposes because the plaintiff had "yet to submit a single formal application to the [defendant] for approval" and "informal efforts to gain approval for land development are insufficient, by themselves, to constitute final government action" (quotations omitted)).

Finally, the futility exception to the ripeness requirement does not apply. Although Grand Medford does not explicitly invoke this exception, the language it uses to characterize the Town's actions sounds in futility arguments. *See, e.g.,* Am. Compl. ¶ 137 ("The Town has interpreted [the] Town Code . . . to grant the Planning Board the authority to refuse to release a performance bond and force the renewal of surety bonds posted therefore ***indefinitely*** until such time as . . . [the]

Planning Department [staff] are satisfied with a list of conditions that they arbitrarily assemble . . . ."). For the futility exception to apply, a plaintiff must demonstrate: (1) "that plaintiff has filed at least one meaningful application [for a variance], and (2) the inevitability of refusal of the application, taking into consideration factors such as the defendants' hostility, delay and obstruction." *Vill. of Pomona*, 915 F. Supp. 2d at 601.

As I previously discussed, Grand Medford has failed to allege that it has properly applied to the Planning Board for release of its performance bonds. Even if it had satisfied the first prong of the futility requirement, Grand Medford has not alleged facts sufficient to meet the second prong. In other sections of the Amended Complaint, Grand Medford alleges that the Town's conduct "is based on [its] malicious and bad-faith intent to injure [p]laintiff[] . . . ." Am. Compl. ¶ 44. Grand Medford does not, however, plead facts to demonstrate how defendant's conduct is malicious or in bad faith, beyond threadbare allegations that the Town treats other contractors differently and that the release of the performance bond has been delayed. *Id.* ¶¶ 212–17 (alleging bad faith differential treatment but failing to explain how other developers are similarly situated); *id.* ¶ 137 (alleging potentially indefinite delay of the bonds). "Conclusory assertions that defendant[] acted with malicious intent and bad faith . . . in order to delay and obstruct . . . [the release of Grand Medford's bonds] without more is insufficient to establish that the refusal [to release the bonds] . . . is certain and invoke the narrow futility exception." *Country View Ests. @ Ridge LLC v. Town of Brookhaven*, 452 F. Supp. 2d 142, 154 (E.D.N.Y. 2006) (internal quotations omitted). Additionally, Grand Medford first "demanded" the release of its performance bond on July 22, 2020, Am. Compl. ¶ 41, and filed its lawsuit on December 23, 2022. *See* Original Compl., ECF. No. 1. A delay of approximately 2.5 years from when Grand Medford first demanded release of its performance bond, without more, is insufficient to justify application of the futility exception.

*See Country View Estates*, 452 F. Supp. 2d at 155 (determining that an approximately two-year delay was "insufficient to create futility, especially when considered in comparison to the eight-year delay [in the application process] in *Williamson County* where the Supreme Court found the claim was not ripe") (quoting *Goldfine v. Kelly*, 80 F. Supp. 2d 153, 161 (S.D.N.Y. 2000)).

Further, the Town has not completely "dug in its heels" and made clear that all efforts to guarantee release of the performance bond would be futile. *Sayville*, 43 F.4th at 294. As Grand Medford acknowledges, Scheyer Court's negotiations with the Planning Board over the amount of the Quigley Estates performance bond were not futile. When Scheyer Court urged the Town to decrease the performance bond because it had already completed some of the work the bond covered, the Town agreed and thereafter, decreased the bond's value. *See* Am. Compl. ¶¶ 108–13. Although release of a performance bond and decreasing the value of a performance bond are different, both involve an acknowledgement that work under the bond has been successfully completed. These successful negotiations between the Planning Board and Scheyer Court demonstrate that the Town is not unwilling to recognize when work has been completed. *See Pakdel*, 14 S. Ct. at 2231 (explaining that a claim may be unripe if "avenues still remain for the government to clarify or change its decision"); *Sunrise Detox V., LLC*, 769 F.3d at 124 (determining that the plaintiff's equal protection lawsuit challenging an agency commissioner's decision that it could not develop its property was not ripe because that decision was not final and was instead subject to change pending an appeal to the Zoning Board of Appeals).

As a result, I dismiss Grand Medford's takings claim as unripe.

## IV. Plaintiffs'[5] Due Process Challenge to the Brookhaven Town Code sections SR-17 (C) and (F) [6]

---

[5] I read this section of the Amended Complaint as applying to both Grand Medford and Scheyer Court because plaintiffs, at times, refer to themselves in the plural. Am. Compl. ¶¶ 136–37, 148.

[6] Plaintiffs allege in their as-applied due process challenge to the Brookhaven Town Code that the

Plaintiffs claim that sections SR-17 (C) and (F) of the Brookhaven Town Code violate the Due Process Clause to the extent that they allow the Planning Board to: (1) "extend . . . the term of a performance bond in perpetuity;" (2) "add to a developer's obligations under a conditional final approval and performance bond without due process;" and (3) "compel a developer to pay for repairs to both public and private improvements without notice or an opportunity to be heard." Am. Compl. 154a–154b. The Town argues, on the other hand, that I should dismiss plaintiffs' as-applied due process challenge to the Brookhaven Town Code as unripe and as meritless. Defs.' Mot. 7–11 (ripeness); *id.* 12–18 (merits argument). Because portions of these due process challenges are unripe and the challenges are otherwise unmeritorious, I dismiss them.

### A. Ripeness

To some extent, all three parts of plaintiffs' as-applied challenge to the Brookhaven Town Code share some common facts with the takings claim. In the takings claim, Grand Medford alleges that the Town took its rights "in cash posted as the Performance Bonds" by improperly conditioning the release of the bond on its completion of the punchlist items and other maintenance and repairs. *See* Am. Compl. ¶¶ 220, 223. Likewise, plaintiffs' due process challenge rests on the theory that the Town's interpretation of the Town Code empowers it to hold plaintiffs' performance bonds until they complete the punchlist items and other maintenance work without ever having a hearing. *Id.* ¶¶ 130, 137, 139–141.

Despite the factual similarity between the takings and the due process claims, plaintiffs allege that they suffered at least one injury due to the Town's interpretation of the Brookhaven

---

Town's interpretation of this code violates both their procedural and substantive due process rights. *See* Am. Compl. ¶¶ 142–50. As a result, I will refer to this claim generally as a due process challenge.

Town Code that is distinct from the injury that plaintiffs contend resulted from the taking. Plaintiffs' alleged due process injuries resulting from the Town's interpretation of the Brookhaven Town Code are twofold and include: (1) the loss of their rights to the performance bonds due to the unlawful extension of their bonds, *id*. ¶ 154a; and (2) the "hundreds of thousands of dollars" plaintiffs will have to spend to complete the repair work and the work the Town added to their performance bonds, *id.* ¶¶ 81, 154a-b. The first injury—the loss of the rights to the performance bonds due to unlawful extension of the bonds' terms—is the same injury Grand Medford alleges in its takings claim. *See id*. ¶¶ 231, 234 (describing the takings claim injuries). As a result, the final decision ripeness requirement applies to this portion of the due process claim.[7] *See Kurtz,* 758 F.3d at 509–10, 515–16 (explaining that the final decision ripeness requirement applied to the plaintiffs' due process claim arising from Verizon's installation of terminal boxes on their properties because all of the procedural injuries were related to their allegation that they did not receive just compensation from Verizon for the installation of the boxes, which was also the basis of the associated takings claim); *Adrian*, 2007 WL 1467417, at *16–17 (determining that the final decision requirement applied to the plaintiffs' procedural due process claim because the injury that the alleged violation caused—plaintiff's loss of development potential on a piece of property— was coextensive with the takings injury alleged).

For the reasons I previously discussed, defendant's refusal to release the performance bond is not a final decision. *See supra*, Discussion Section III. As a result, this portion of plaintiffs' as-applied due process challenge is not ripe. *Id.* Scheyer Court, however, did not bring a takings claim

---

[7]Although Scheyer Court did not challenge the Town's retention of the Quigley Estates performance bond as an unconstitutional taking, I still apply the final decision ripeness requirement to its due process challenge. *See Kurtz*, 758 F.3d at 515 ("[A]pplying [the final decision ripeness requirement] . . . to [a] due process claim[] . . . prevents evasion of the ripeness test by artful pleading of a takings claim as a due process claim.").

against the Town for its retention of the Quigley Estates performance bond, and so I did not determine whether that claim was ripe. For the same reasons that defendant's decision to not release Grand Medford's performance bond is not a final decision, the Town's decision to not release the $13,813 Scheyer Court paid to renew the performance bond is also not final. The Town has adjusted the Scheyer Court performance bond, indicating that negotiations with it are not futile, Am. Compl. ¶¶ 108–13; under Brookhaven Town Code section SR-17(F) the Planning Board only has authority to recommend release of the performance bond to the Town Board, which is empowered to make the final decision; and Scheyer Court only alleges that it "demanded release of the Performance Bond," *id*. ¶¶ 117–18, not that it submitted the materials necessary to properly request release of the performance bond under Brookhaven Town Code sections SR-17(D)–(F).

The final decision ripeness requirement does not apply, however, to the portions of plaintiffs' as-applied due process claim challenging the Brookhaven Town Code for allowing defendant to add work items to plaintiffs' performance bonds and forcing them to continue doing repair work. Although the requirements that plaintiffs complete additional work and continue making repairs are conditions they must meet to warrant release of the performance bonds, as framed by the plaintiffs, these requirements also result in their own independent injuries—the expenditure of additional resources. *See, e.g., id*. ¶ 81 (alleging they will have to spend "hundreds of thousands of dollars [on the additional] maintenance work"). This is the type of independent injury that some courts have determined warrants not applying the final decision ripeness requirement to non-takings claims. *See, e.g., Dougherty*, 282 F.3d at 87 (determining that the ripeness requirement did not apply to a First Amendment claim in a land use case because the injury associated with the First Amendment retaliation claim—revocation of a permit—was immediate and "significantly different from his due process and equal protection claims," which

were related to defendant's rejection of plaintiff's "development plan"); *Harris v. Cnty. of Riverside*, 904 F.2d 497, 501 (9th Cir. 1990) (determining that the final decision ripeness requirement did not apply to the plaintiff's procedural due process claim even though that claim was "related to his taking claim" because he was challenging the at issue "rezoning decision in isolation, as a single decision with its own consequences, rather than as one in a series of County actions resulting in a taking"). In *Harris*, for example, the Ninth Circuit determined that the final decision ripeness requirement did not apply to the plaintiff's procedural due process claim, which in addition to challenging the "deprivation of [the commercial] use" of its property—a takings-style injury—also challenged the requirement that it pay a "fee to apply to regain the commercial use of its land"—an entirely distinct injury. *Harris*, 904 F.2d at 501. Similarly, plaintiffs here allege that the Town's interpretation of the Town Code causes them an independent injury—the required expenditure of additional funds to maintain and repair their subdivisions—in addition to the takings injury—the Town's refusal to release the performance bonds. As a result, the final decision ripeness requirement does not apply to the portions of plaintiffs' as-applied due process claim alleging that the Town is requiring additional work and repair.

## B.  Merits

To state a due process claim, a plaintiff must have a constitutionally cognizable property interest. *See Villager Pond, Inc.*, 56 F.3d at 378. The only property interest that plaintiffs assert in the portion of the Amended Complaint alleging an as-applied due process challenge is Grand Medford's interest in the $680,000 in cash posted as a performance bond. Am. Compl. ¶ 142.[8] As

---

[8] Although in Count I of the Amended Complaint plaintiffs do not argue that the "renewal premium of $13,813.00" that Scheyer Court had to pay is a property interest, Am. Compl. ¶ 166, I read this section of the Amended Complaint as also asserting Scheyer Court's renewal premium as a property interest because plaintiffs refer to themselves in the plural, *id.* ¶¶ 136–37, 148.

I previously discussed, however, neither Grand Medford's claim nor Scheyer Court's claim to its performance bond is ripe. *See supra* Discussion Section IV.A. Plaintiffs do not explicitly allege another property interest. They do, however, allege that they will have to spend "hundreds of thousands of dollars" on additional maintenance work. *Id.* ¶ 81–82. I read this as another potentially relevant property interest. Neither of these potential property interests, however, are constitutionally cognizable.

Even if plaintiffs' claims to the release of their performance bonds were ripe, plaintiffs have not demonstrated a clear entitlement to their release. First, the Brookhaven Town Code grants the Town significant discretion in determining when and whether to release a developer from a performance bond. Under Brookhaven Town Code section SR-17(C), the Planning Board has the discretion to extend the term of the bond "in appropriate cases where such action would not be contrary to the intent of this regulation." Brookhaven Town Code § SR-17(C) (1990). The regulation also grants the Planning Board the discretion to "recommend to the Town Board the release of the performance bond" when it has determined that the work under the bond has been satisfactorily completed. *Id.* § SR-17(F). Even after the Planning Board has made such a recommendation, the Town Board and the Highway Department must approve the improvements before it authorizes release of the performance bond. Brookhaven Town Code § SR-17(F). The significant discretion that the Town Code grants the Planning Board and Town Board to determine when the terms of the performance bond have been met weighs against plaintiffs' argument that they have claims of entitlement to the bonds' release. *See Cunney v. Bd. of Trs. of Grand View*, 56 F. Supp. 3d 470, 497, 500–01, 505 (S.D.N.Y. 2014) (determining that a plaintiff did not have a property interest in the issuance of a building permit because local law vested city officials with discretion in determining whether plaintiff's construction complied with all applicable laws and

regulations).

Likewise, New York State law does not provide plaintiffs with a clear claim of entitlement
to the release of their performance bonds. The applicable New York State law, NY Town § 277(9),
also grants the Town discretion—although somewhat less so than the local law—over the terms
and length of performance bonds. *See* NY Town § 277(9)(d) ("Any such performance bond . . .
shall run for a term to be fixed by the planning board, but in no case for a longer term than three
years, provided, however," that the term may be extended with consent of the parties to the bond);
*id.* (indicating that a Planning Board may reduce the amount of the performance bond if it
"decide[s] at any time during the term of the performance bond" that work has been adequately
completed). This is discretion that the Town has utilized in this case, decreasing the amount of the
Quigley Estates performance bond after Scheyer Court demonstrated completion of some work
items. *See* Am. Compl. ¶¶ 108–113. Although under the New York State law extending the bond
term beyond three years requires the parties' consent, plaintiffs have cited nothing relevant
indicating that the law grants them an entitlement to release of the bond if it exceeds a three-year
term. *See generally* Pls.' Opp'n.[9] Instead, to the extent that work on a bond has not been completed
and a bond has not been renewed, New York State law contemplates default proceedings to
determine the parties' outstanding obligations. NY Town law §277(9)(e) (indicating that the Town
Board may declare a performance bond in default and seek "the sum remaining payable

---

[9] In fact, when plaintiffs filed this lawsuit, Scheyer Court's performance bond had only been posted
for, at most, two years. In January 2021 the Planning Department agreed to accept a $460,428.50
performance bond from Scheyer Court, which it later posted. Am. Compl. ¶ 113. In April 2021,
this was converted to a surety bond. *Id.* Plaintiffs filed this lawsuit in December 2022. *See* Original
Compl. From the date that the Planning Department agreed to accept Scheyer Court's performance
bond to the filing of this lawsuit, three years have not passed, providing further support for the
conclusion that Scheyer Court does not have a clear entitlement to release of the Quigley Estates
performance bond.

thereunder" if work is not completed).

Ultimately, the discretion that these local and state laws grant the Town to determine whether to release a performance bond supports the Town's argument that plaintiffs do not have a clear claim of entitlement to their release. *See Vertical Broad., Inc.,* 84 F. Supp. 2d. at 424–25 (deciding that the plaintiffs did not have a cognizable property interest "in the permits and variances" they sought because, under state law, whether to grant a variance was a discretionary decision for defendants to make based upon a balancing of several different factors).

Further, although plaintiffs assert that they have completed all the work that the performance bonds require to a satisfactory level, Am. Compl ¶¶ 40, 116, they have failed to plead that they have submitted all the materials necessary to warrant release of the performance bonds under the Brookhaven Town Code. *See supra* Discussion Section III. Instead, plaintiffs have simply "demanded" the performance bonds' release. Am. Compl. ¶¶ 41–42, 76, 117–18. These facts further demonstrate that plaintiffs have failed to adequately allege a clear entitlement to release of the performance bonds under New York State and local law.

To the extent that plaintiffs assert that they have a clear entitlement to release of the performance bonds because they have fulfilled the bond's terms, *see id.* ¶ 8, this also is incorrect. Plaintiffs' rights under the performance bonds are contractual in nature, not constitutional. In New York, any right that plaintiffs claim in a performance bond is governed by New York contract law. *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 n.4 (2d Cir. 2009) ("In New York, a bond is a contract[,] and [a court] therefore look[s] to standard principles of contract interpretation to determine the rights and obligations of a surety under a bond." (quotations omitted)). Additionally, a performance bond is an "ordinary or routine government contract." *Gizzo v. Ben-Habib*, 44 F.Supp.3d 374, 385 (S.D.N.Y 2014). It is not the type of contract that impacts the status of a

claimant as, for example, a permanent employee of the state or a dependent on the state. *See id.* (describing the interests that may elevate an alleged contractual violation to the constitutional level). As a result, the contracts for the performance bonds do not involve constitutionally cognizable interests.

Plaintiffs also may be asserting a property interest in the "hundreds of thousands of dollars" they must spend on additional maintenance work which was not originally a condition of the performance bond or the conditional final approval. Am. Compl. ¶¶ 81–82. As I just discussed, however, this alleged injury is contractual in nature, not constitutional. Because contract law governs disputes over performance bonds, *see Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 n.4 (2d Cir. 2009), whether the Town has unlawfully added work to a performance bond requiring expenditure of additional resources does not necessarily implicate plaintiffs' constitutional rights, *see Martz*, 22 F.3d at 30 ("[T]he type of interest a person has in the enforcement of an ordinary commercial contract often is qualitatively different from the interests the Supreme Court has . . . viewed as a property entitled to . . . due process protection." (quotation omitted)). Further, plaintiffs' allegation that the Town's actions are negatively affecting their "ability to construct new land and infrastructure developments," is also not a valid property interest. *Id.* ¶ 11. Although the resources plaintiffs expend to meet their contractual obligations may negatively affect their ability to do business, "the activity of doing business, or the activity of making a profit is not a property in the ordinary sense." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 675 (1999); *see also Tuchman v. Connecticut*, 185 F. Supp. 2d 169, 170–71, 174 (D. Conn. 2002) (concluding that the plaintiffs did not have a constitutional property interest in conducting its "transshipment business" after Connecticut ordered the plaintiffs to "cease and desist all transshipment business" because "business in the

sense of the activity of doing business . . . is not property in the ordinary sense" (quoting *Coll. Sav.*, 527 U.S. at 675)); *Salemo v. Murphy*, No. 11-CV-2525 (TPG), 2012 WL 4714765, at *1–2, *9 (S.D.N.Y. Sept. 27, 2012) (dismissing plaintiff's claim that the defendants' actions investigating his alleged criminal activity deprived him of property by causing his business to go bankrupt because "a businessperson has no property interest in the activity of doing business itself"). As a result, any changes to the terms of the performance bonds and the impact those changes may have on plaintiffs' businesses do not implicate a property interest that the Due Process Clause protects.

Because plaintiffs have failed to establish that they have a constitutionally cognizable property interest at stake, I do not need to move to the second part of either the procedural or substantive due process tests.

Plaintiffs also argue that the Town Code is unconstitutionally vague because the Town's interpretation of the code "results in the Town being able to retain the performance bonds for an indefinite period of time." Am. Compl. ¶ 151. "Where, as here, First Amendment rights are not implicated," I evaluate plaintiffs' vagueness challenge "in light of the specific facts . . . [and] not with regard to the facial validity of the . . . statute . . . at issue." *United States v. Holcombe*, 883 F.3d 12, 17 (2d Cir. 2018) (quotations omitted). Further, because the local law plaintiffs challenge is not criminal legislation, the vagueness standards are more relaxed. *See Conn. Bar Ass'n v. United States*, 620 F.3d 81, 100 (2d Cir. 2010). Plaintiffs' characterization of the statute as vague is conclusory, and they do not point to any language in the statute, or even a specific provision, to support their argument. I read their Amended Complaint as alleging that the Brookhaven Town Code is unconstitutionally vague because it does not limit a performance bond term to a specific number of years and, as a result, a reasonable person may not know how long they are subject to

the terms of the performance bond. *See* Am. Compl. ¶ 151.

The ordinance, however, is not so broad. In fact, Brookhaven Town Code § SR-17(C) indicates that a "performance bond shall run for a period of one year" and that "the Planning Board can act to extend the term of the bond in appropriate cases where such action would not be contrary to the intent of this regulation." That the statute does not set a specific numerical benchmark for how many times the Planning Board may extend the term of the bond does not necessarily mean that the ordinance is vague. *See VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 186–97 (2d Cir. 2010) (determining that a statute that defined a "sexually oriented business" as "an establishment that has a substantial or significant portion of its stock in trade in adult merchandise" was not unconstitutionally vague for failure to provide notice of exactly how much adult merchandise was required to trigger the statute or for "encourage[ing] arbitrary . . . enforcement"). Likewise, the statute also does not grant the Planning Board unfettered discretion to extend the term of a performance bond, but instead limits its authority to do so only when it would not be "contrary to the intent of this regulation"—a phrase given meaning by the other provisions outlining the specific materials developers must submit to warrant release of performance bonds. *See id.* §§ SR-17 (D)–(F). As a result, plaintiffs have failed to adequately allege that the Brookhaven Town Code is unconstitutionally vague.

Lastly, plaintiffs contend that the Brookhaven Town Code is "overbroad inasmuch as its prospective reach includes constitutionally protected rights." Am. Compl. ¶ 153. Because this is the only reference plaintiffs make to their overbreadth allegation, and because I have determined that plaintiffs failed to establish that the Brookhaven Town Code violates their due process rights, I dismiss this claim.

## V.    Plaintiffs' § 1983 Procedural Due Process Claim[10]

Plaintiffs' 42 U.S.C. § 1983 procedural due process claim is duplicative of plaintiffs' as-applied due process challenge to the Town's interpretation of the Brookhaven Town Code. *See* Am. Compl. ¶¶ 167–68. I therefore dismiss the § 1983 challenge articulated in Count III on the same grounds as I dismiss the as-applied due process challenge in Count I.[11]

## VI.   Grand Medford's § 1983 Substantive Due Process Claim[12]

Grand Medford alleges that the Town violated its substantive due process rights in two ways. First, it alleges that the Town violated its rights by refusing to release its performance bond. *Id.* ¶ 245. I dismiss this substantive due process claim for the same reasons that I dismissed Grand Medford's as-applied due process claim based on this alleged deprivation. *See supra* Discussion Section IV.  Grand Medford's second substantive due process claim is that the Town violated its rights by delaying the issuance of two certificates of occupancy from November 2020 to April

---

[10] Plaintiffs do not indicate whether the §1983 due process claim alleged in Count III is procedural or substantive. Because plaintiffs phrase the injuries they received in this count in terms of lack of "notice or opportunity to be heard," Am. Compl. ¶¶ 164, 167–68, and because they do not refer to the Substantive Due Process Clause anywhere in Count III, I read this claim as alleging that the Town violated plaintiffs' procedural due process rights.

[11] In their § 1983 procedural due process claim, plaintiffs do not reference the bonds Grand Medford had to post to secure the certificates of occupancy. *See* Am. Compl. ¶¶ 34–39; *id.* ¶¶ 163–74 (Count III). Even if Grand Medford asserted the Town's retention of the certificate of occupancy bonds as a basis for its due process claim, it failed to demonstrate that it has a cognizable property interest in the release of these bonds. *Id.* ¶¶ 163–74. Under Town of Brookhaven Code section SR-17(E)(1), if a developer applies for a certificate of occupancy "prior to the completion and acceptance of the public improvements in the subdivision," the developer must deposit with the Town a sum of money, which the Town will hold "pending the completion and acceptance of the public improvements." § SR-17(E)(1). As I have previously discussed, the Town has discretion to determine when public improvements are completed. *See id.* §SR-17(F). As a result, Grand Medford has no constitutionally cognizable property interest in the immediate release of these bonds.

[12] Plaintiffs do not reference Scheyer Court's bond in this claim, and Scheyer Court did not allege any issues with the certificates of occupancy. As a result, I conclude that only Grand Medford brings this claim.

2021. Am. Compl. ¶ 246. Grand Medford alleges that this delay created an injury independent from the injury the Town caused by refusing to release the performance bond. *Id.* ¶ 66 ("This refusal to issue the final 2 Certificates of Occupancy tied up almost $1 million in capital and prevented bona fide third party purchasers from closing on the title to these finished dwellings . . ."). Because Grand Medford pleads an independent injury arising from the Town's delayed issuance of the certificates, the final decision ripeness requirement does not apply to this Substantive Due Process Clause claim. *Sunrise Detox V, LLC.*, 769 F.3d at 123 ("[A] plaintiff alleging [a non-takings claim] in the context of a land-use dispute is subject to the final-decision requirement unless he can show that he suffered some injury independent of the challenged land-use decision.").

I nonetheless dismiss this claim because Grand Medford fails to state a claim under *Monell*. To plead municipal liability, a plaintiff must allege that it was deprived of its constitutional rights pursuant to "an official policy or custom." *Lucente*, 980 F.3d at 297. A plaintiff may establish the existence of an official policy or custom in several ways, including by alleging that: (1) an officially adopted policy exists; (2) the defendant's actions are so widespread and persistent that the actions constitute a *de facto* policy; or (3) the defendant is a policymaker with the authority to make a final decision on the relevant matter. *See Agosto v. N.Y. City Dep't of Educ.*, 982 F.3d 86, 99 (2d Cir. 2020).

Beyond the conclusory allegations that defendant was acting pursuant to a "town policy," *see, e.g.,* Am. Compl. ¶¶ 59, 250, Grand Medford does not allege facts sufficient to demonstrate the existence of a Town policy permitting delayed issuance of the certificates of occupancy under *Monell*. *See Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015) (dismissing a disparate treatment claim against New York City because the plaintiff failed to adequately allege

the existence of an official policy, beyond her "general and conclusory allegation that there was . . . a policy"); *Green v. City of Mt. Vernon*, 96 F. Supp. 3d 283, 302 (S.D.N.Y. 2015) ("[T]o survive a motion to dismiss, Plaintiffs cannot, through conclusory allegations, merely assert the existence of a municipal policy or custom, but must allege facts tending to support, at least circumstantially, an inference that such a [policy] . . . exists." (internal quotations omitted)). First, Grand Medford acknowledges that this policy is not officially adopted or codified pursuant to the Town's legislative process. Am. Compl. ¶ 59 ("This policy is NOT published anywhere, is not in the Town code, is not on the permits, filed map, approval grants or on the multiple court ordered stipulation."). Grand Medford also recognizes that "[t]his purported Town policy . . . [was] not applied to the subdivisions of dozens of other similarly situated Brookhaven developers," indicating that this practice is not pervasive or widespread. *Id*. ¶ 60. Finally, in neither its Amended Complaint nor its opposition to the Town's motion to dismiss does Grand Medford explicitly allege that a policymaker with the authority to render a final decision on issues related to certificates of occupancy delayed the issuance of the certificates. *See id.*; Opp'n 36, 38–39.[13]

---

[13] In its opposition papers, Grand Medford argues that the Town held back two certificates of occupancy pursuant to a Town policy, referencing emails from several Town employees admitting that this policy exists. *See* Opp'n 36. None of the individuals referenced are party to this lawsuit, and Grand Medford referenced neither the individuals nor their communications in the Amended Complaint. *See generally* Am. Compl. As a result, I decline to consider this information. *See Peacock v. Suffolk Bus Corp.*, 100 F. Supp. 3d 225, 231 (E.D.N.Y. 2015) ("It is well-settled that a plaintiff 'cannot amend [its] complaint by asserting new facts or theories for the first time in opposition to [a] motion to dismiss.'") (quoting *K.D. v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209, n.8 (S.D.N.Y. 2013)). Further, it is possible that Grand Medford included this information to demonstrate how it may amend its complaint, although it did not specifically assert that. Even assuming that Grand Medford does wish to amend its Complaint to include this information, it neither asserts that any of these individuals are *Monell* policymakers nor explains how they may have final decision-making power regarding issuance of certificates of occupancy. *See* Opp'n 36. As such, if this information was intended as a proposed amendment, it would be futile because it does not sufficiently state a *Monell* claim. *See Dilworth v. Goldberg*, 914 F. Supp. 2d 433, 454 (S.D.N.Y. 2012) (dismissing a *Monell* claim partially because "[n]othing in the[] allegations suggest[ed] that the[] [defendants] were final policymakers . . . or that their actions

Although Grand Medford alleges that the Planning Department was responsible for the purported policy, *see* Am. Compl. ¶ 53 (describing the policy as a "decree by the Planning Department staff"), it fails to include any facts or cite to any law to support a conclusion that the Planning Department is final decisionmaker on this issue. *See*, *id.*; Opp'n 38–39.[14] As a result, Grand Medford fails to adequately allege that a policy exists under the policymaker theory. *See Green*, 96 F. Supp. 3d at 302 (determining that plaintiffs' *Monell* claim failed partially because plaintiffs did not "allege any facts to state a plausible claim that 'the challenged action was directed by an official with final policymaking authority'") (quoting *Mandell v. County of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003)); *see also Green Santiago v. Warminster Twp.*, 629 F.3d 121, 135 n.11 (3d Cir. 2010) (explaining that although whether a police chief "is a final policymaker is ultimately a legal rather than factual question, that does not relieve [the plaintiff] of the obligation to plead in some fashion that [the police chief] had final policy making authority, as that is a key element of a *Monell* claim").

Because Grand Medford failed to adequately allege that the Town acted pursuant to a policy or custom under any *Monell* theory in delaying the issuance of the certificates of occupancy, I dismiss the portion of its § 1983 substantive due process claim based on this allegation.[15]

---

constituted official [] policy"); *Rukoro v. Fed. Republic of Ger.*, 976 F.3d 218, 228 (2d Cir. 2020) ("Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies.").

[14] In fact, under the Town Code of Brookhaven, the Planning Board only has the authority to recommend changes to zoning law and policy to the Town Board, not institute final changes itself. Brookhaven Town Code § 85-5 (2023).

[15] Grand Medford generally alleges that all defendants acted "collectively" but fails to assert facts to demonstrate how defendants worked together on this alleged policy. *See* Am. Compl. ¶ 222. This theory of collective action is, therefore, insufficiently pleaded.

## VII.    Plaintiffs' § 1983 Equal Protection Claims[16]

Plaintiffs also allege that the Town is violating their equal protection rights by treating them differently from other subdivision developers in Brookhaven. Specifically, plaintiffs contend that the Town does not: (1) hold other developers to performance bond terms longer than three years, Am. Compl. ¶ 204[17]; (2) force other developers to continue repair work and to do work not in the original performance bond, *id*; (3) delay issuing certificates of occupancy to other developers, *id.*; and (4) fabricate SWPPP requirements for other developers, *id.* ¶ 205. For reasons I have already discussed, I dismiss as unripe all equal protection claims related to the Town's refusal to release the performance bonds. *See supra* Discussion Section IV.A.[18] On the other hand,

---

[16] Plaintiffs bring two equal protection claims: one under a theory of selective enforcement, and a second under a class of one theory. Am. Compl. ¶¶ 202–17. Plaintiffs do not mention Scheyer Court in either of the sections describing these allegations. *Id.* Because plaintiffs occasionally refer to themselves in the plural, however, I will analyze how these claims apply to Scheyer Court. That said, the only portion of the equal protection claims relevant to Scheyer Court are those related to the performance bond because the Town neither delayed issuance of certificates of occupancy to Scheyer Court nor fabricated SWPPP requirements for it. *See generally id.*

[17] Plaintiffs allege that: "Grand Medford was treated differently from other similarly situated subdivision developers by virtue of the full panoply of unlawful municipal conduct heretofore alleged." Am. Compl. ¶ 204. I read this assertion as invoking all the allegations related to the performance bond including its delayed release, the addition of work terms, and the requirement to continue repair work.

[18] In the Equal Protection Clause sections of the Amended Complaint, plaintiffs request that I grant them compensatory damages. Am. Compl. ¶¶ 210, 216. In *Sunrise Detox*, the Second Circuit recognized that a final decision is typically not required for a plaintiff to seek damages for Equal Protection violations. 769 F.3d at 122–23. The Court pointed out, however, that in such cases, "the victim of discrimination normally seeks compensation, in the form of money damages." *Id.* at 123. In that case, the plaintiff did not seek compensatory damages for the alleged discrimination, but instead sought an injunction authorizing its construction project. *Id.* The Court reasoned that this relief brought the case "squarely within the compass of" the final decision ripeness requirement because it would not be able to discern whether the "allegedly discriminatory decision of the official had any effect at all on Sunrise's application [to proceed with the construction project]" until the defendant made a final decision on that application. *Id.* As a result, the Court applied the final decision ripeness requirement. *Id.* It declined to decide, however, whether the requirement would apply to a plaintiff seeking compensation for an alleged Equal Protection Clause violation in a land use dispute. *Id.* In *Village Green at Sayville, LLC v. Town of Islip*, the Second Circuit likewise declined to determine whether the final decision ripeness requirement applied to a

the final decision ripeness requirement does not apply to the claims related to additional work, repair work, and the delayed issuance of the certificates of occupancy. *See supra* Discussion Section IV.A (additional and repair work); *id.* Section VI (certificates of occupancy). The final decision ripeness requirement also does not apply to the claim related to the allegedly fabricated SWPPP requirements because Grand Medford contends that these requirements caused an injury independent of the takings claim. Am. Compl. ¶¶ 46–48. I dismiss these remaining equal protection claims, however, for failure to state a claim under *Monell*.

As discussed regarding its substantive due process claim, Grand Medford fails to adequately allege that the Town acted pursuant to an official policy or custom when it delayed issuing the two certificates of occupancy from November 2020 to April 2021, much less that a Town policy exists that authorizes selective enforcement of certificate of occupancy policies. *See supra* Discussion Section VI.

Similarly, Grand Medford did not adequately allege that the Town incorrectly subjected it to SWPPP requirements from January 2020 to September 2020 pursuant to a policy or custom. *See* Am. Compl. ¶¶ 44–52 (describing the SWPPP requirements). Grand Medford contends that "[t]he fabricated SWPPP requirement was part of a Town endorsed policy to extort developers for additional and unnecessary reinspection fees and to delay the final approval of . . . improvements."

---

plaintiff's Equal Protection claim, even though the plaintiff sought compensatory damages for discrimination. 43 F.4th at 295 n.5. The Court reasoned that because the plaintiff's "claim for monetary damages [did] not sound in dignitary or emotional harm" and because it concluded that the defendant did reach a final decision regardless, it did not need to decide the question *Sunrise Detox* left open. *Id.* Like the plaintiff in *Sayville*, plaintiffs in this case did not articulate the harm they experienced due to the Town's alleged discrimination in emotional or dignitary terms. Instead, the only harm that plaintiffs allege resulted from the discrimination related to the performance bonds is the fact that the Town has refused their release. Am. Compl. ¶¶ 202–17. As a result, I decline to exempt plaintiffs' performance bond Equal Protection Clause claim from the final decision ripeness requirement.

*Id.* ¶ 51. It fails, however, to cite to any provision of the Brookhaven Town Code or other body of law authorizing this fabricated requirement. Instead, the Amended Complaint implies that the Town held Grand Medford to these SWPPP requirements by mistake. *Id.* ¶ 49 ("This wrongful SWPPP condition was later acknowledged as baseless by the Town."). Grand Medford also defeats any inference that imposing fabricated SWPPP requirements on developers was a widespread Town custom, as it alleges that the Town singled it out in imposing these requirements. *Id.* ¶ 205 ("Of the many subdivision applicants in the Town of Brookhaven who have sought to have their bonds released . . . only [p]laintiffs have been subjected to . . . fabricated SWPPP violation declarations."). Finally, Grand Medford does not contend that a policy maker with final decision-making authority on SWPPP imposed these requirements. Although, Grand Medford alleges that the Town of Brookhaven Planning Department ("Planning Department") denied final approvals for five single-family dwellings based on its non-compliance with the SWPPP requirements, *id.* ¶ 44, it pleads no facts and cites to no law indicating that the Planning Department is a relevant final decisionmaker. As a result, I dismiss the equal protection claims arising from the fabricated SWPPP requirements for failing to state a claim under *Monell*.

Lastly, I dismiss plaintiffs' equal protection claims arising from the allegations that the Town neither adds to other developers' performance bond obligations nor forces them to do repair work. Like their other equal protection claims, plaintiffs fail to identify an officially adopted Town policy that authorizes unconstitutional selective enforcement of these performance-bond related requirements. In arguing that a Town policy exists for *Monell* purposes, plaintiffs quote language in the Brookhaven Town Code § SR-17(F) that authorizes the Planning Board to recommend release of performance bonds only upon "satisfactory completion" of the work. Opp'n 39. Plaintiffs fail to explain, however, how this policy authorizes the addition of work to a performance

bond not originally contracted for, much less how it authorizes any sort of unconstitutional selective enforcement. Further, plaintiffs' contention that the Town subjected them, but not other developers, to these requirements refutes the notion that a widespread custom exists. Am. Compl. ¶ 205. Finally, plaintiffs fail to adequately allege that a policymaker with relevant final decision-making authority imposed these requirements. *Id.* ¶¶ 202–17. In fact, plaintiffs do not name an individual or entity responsible for this selective enforcement, much less explain how that individual or entity has final decision-making power. *Id.* For these reasons, I dismiss the equal protection claims arising from plaintiffs' allegations that they were the only developers: (1) required to do work not in the original performance bond and (2) required to do repair work.

## VIII.    First Amendment Retaliation Claim[19]

Plaintiffs also claim that the Town refuses to release Scheyer Court and Grand Medford from their performance bonds in retaliation for Article 78 actions that both developers brought years earlier related to their subdivision developments. Am. Compl. ¶¶ 256, 258a–e. Grand Medford additionally contends that the Town delayed issuance of its certificates of occupancy in retaliation for its prior actions against the Town and because it refused to sell Lot 26 to the Town, forcing the Town to commence eminent domain proceedings. *Id.* For reasons I have already explained, I dismiss all First Amendment claims related to the performance bond as unripe. *See supra* Discussion Section IV.A. I dismiss the remaining First Amendment retaliation claim related to the Town's delayed issuance of the certificates of occupancy because Grand Medford failed to state a claim under *Monell*. *See supra* Discussion Section VI.

---

[19] Plaintiffs have not indicated a cause of action pursuant to which they bring their First Amendment retaliation claim. Am. Compl. ¶¶ 255–76. However, I read the Amended Complaint as alleging a First Amendment claim under § 1983 because plaintiffs allege that they are "entitled to recover their costs, including attorneys' fees and expert fees, pursuant to 42 U.S.C. § 1983 against all Defendants" for this alleged violation. *Id.* ¶ 276.

IX.   **Grand Medford's Due Process Challenge to the Brookhaven Wetlands & Waterways Ordinance**

Grand Medford requests that I declare unconstitutional Chapter 81 of the Brookhaven Town Code, "entitled the Town of Brookhaven Wetlands & Waterways Ordinance," to the extent that it "allows the Town to designate real property as wetlands without notice and/or an opportunity to be heard." Am. Compl. ¶ 200. Defendant argues, however, that despite Grand Medford's assertion that the Town designated Lot 26 as a wetland without notice or an opportunity to be heard, *id*. ¶ 194, "the Town's actions with respect to Lot 26 have been undertaken pursuant to New York State Eminent Domain Procedure Law ("EDPL") . . . [which] provides all the procedural due process required." Defs.' Mot. 22; *see also* Am. Compl. ¶ 71 (acknowledging the ongoing state eminent domain proceeding related to Lot 26). Grand Medford has not alleged that the Town failed to follow the notice or hearing procedures set out in sections 204 and 207 of the EDPL, and in fact, acknowledges that these procedures have occurred. Am. Compl. ¶¶ 175–201; Opp'n 34. As a result, I do not read Grand Medford's assertions as alleging that it failed to receive *any* notice or *any* hearing related to the Lot 26 eminent domain proceedings. Instead, I read the Amended Complaint as contending that Grand Medford did not receive notice or a hearing alerting it that the Town considered Lot 26 a protected wetland separate from whatever notice or hearing it received pursuant to the EDPL sections 204 and 207. Defendant argues that Grand Medford's claim is not ripe and that it has failed to state a claim. Defs. Mot. at 7.

A.   **Ripeness**

I assume without deciding that the final decision ripeness requirement applies to this claim because, if the requirement does apply, the Town has clearly rendered a final decision sufficient to meet this requirement and warrant a review on the merits. On April 20, 2022, the New York State Supreme Court issued a vesting order, transferring the property, upon the Town's filing of

an "acquisition map," to the Town for open space purposes. *See* Defs. Mot., Ex. 9. Further, on

May 4, 2022, the Town entered a Notice of Acquisition alerting Grand Medford that it had acquired

the property. *See id.* Ex. 10; *see also*, Am. Compl. ¶ 71. These actions are final decisions sufficient

to fulfill the ripeness requirement. *See Strensrud v. Rochester Genesse Reg'l Transp. Auth.*, 507

F. Supp. 3d 444, 452 (W.D.N.Y. 2020) (determining that the plaintiff's takings claim was ripe

because the state rendered a final decision on the matter when it issued a vesting order); *Goldstein

v. Pataki*, No. 06-CV-5827 (NGG) (RML), 2007 WL 1695573, at *12 (E.D.N.Y. Feb. 23, 2007)

(determining that a plaintiff's takings claims were ripe at the "time of the government entity's

public purpose finding") *report and recommendation adopted in relevant part*, 488 F. Supp. 2d

254 (E.D.N.Y. 2007), *aff'd*, 516 F.3d 50 (2d Cir. 2008).

### B. Merits

Although Grand Medford's claim is ripe, it fails to state a claim that the Brookhaven

Wetlands & Waterways Ordinance violates its due process rights by not guaranteeing it notice or

a hearing prior to designating Lot 26 as a protected wetland. Grand Medford argues that the process

it received pursuant to EDPL section 207 is insufficient for a variety of reasons, including: that (1)

the pending eminent domain proceeding "determines only the value of Lot 26 and not whether it

was improperly designated as 'wetlands'"; (2) "the hearing before the Town Board determines

only whether 'the proposed acquisition in condemnation is to further public use and is in public

interest'"; and (3) that the EDPL § 207 hearing requirements are inadequate because they are

"appellate in nature and would only review the condemnation order," not the Town's decision to

designate Lot 26 as a wetland. Opp'n 34.

These claims are unavailing. The Town initiated eminent domain proceedings and

condemned Lot 26 *because* it determined that the lot is a protected wetland. *See* Defs.' Mot. Ex.

7, at 80–84 (minutes from Town Board hearing discussing Lot 26 as protected wetland); *id.* Ex. 8, at Ex. E (resolution adopting the findings and determinations of the Mach 11, 2021 Town Board hearing); Am. Compl. ¶ 71. Under section 207 of the EDPL, for thirty days after the Town published its determination and findings related to Lot 26 Grand Medford was entitled to seek judicial review in New York State Court of those findings, which covered the parcel's status as a protected wetland. EDPL § 207(A)–(C). As the Second Circuit has determined, this EDPL provision permitting judicial review of a public use determination provides sufficient process under the Due Process Clause. *See Brody v. Vill. of Port Chester*, 434 F.3d 121, 132–33, 134–36 (2d Cir. 2005) ("[T]he post-determination review procedure set forth in EDPL § 207 is sufficient under the [Procedural Due Process] . . . test. Due Process does not require New York to furnish a procedure to challenge public use beyond that which it already provides."). That the pending eminent domain proceeding only covers the value of Lot 26, *see* Opp'n 34; Am. Compl. ¶ 73, has no bearing on whether the EDPL section 207 appellate procedure is sufficient under the Due Process Clause. Instead, Grand Medford initiated this proceeding pursuant to an entirely different provision, EDPL section 701. *See* EDPL § 701; *see also* Defs.' Mot. Ex. 11. Further, Grand Medford's argument that it has a due process right to have a hearing on whether Lot 26 is a wetland *prior to* the Town's determination that it is one is also unavailing. *Brody*, 434 F.3d at 133–34 (determining that a plaintiff challenging a Town's decision to condemn his property had "no constitutional right to participate in the Village's initial decision to exercise its power of eminent domain" because "such a rule would impose an impossible burden on the condemner and would represent an unwarranted judicial arrogation of the legislature's power to condemn").

Lastly, Grand Medford did not allege that it failed to receive notice pursuant to EDPL section 204. Instead, it contends that the Town was not required to provide it notice, and did not

provide it notice, under the Brookhaven Wetlands & Waterways Ordinance prior to its designation of Lot 26 as a wetland. Am. Compl. ¶¶ 194, 200. Even if Grand Medford did not receive notice pursuant to EDPL section 204 prior to the Town's wetland designation, which it has not alleged, the Supreme Court has determined that due process does not require that a condemnee receive notice prior to a legislature's decision to condemn a property. *See Georgia v. City of Chattanooga*, 264 U.S. 472, 483 (1924) ("The taking is a legislative and not a judicial function, and an opportunity to be heard in advance need not be given."); *see also Brody*, 434 F.3d at 128 (describing *City of Chattanooga* as standing for the "well-established proposition that, because public use is a legislative determination, no notice at all need be given before a legislature passes an ordinance authorizing the exercise of eminent domain"). Grand Medford's notice argument therefore fails.

As a result, I dismiss this procedural due process challenge to the Brookhaven Wetlands & Waterways Ordinance because, as Grand Medford acknowledges, the Town initiated EDPL proceedings related to Lot 26, and Grand Medford has failed to allege that Grand Medford violated the EDPL. Am. Compl. ¶ 78; Opp'n 34.

Grand Medford also contends that the Brookhaven Wetlands & Waterways Ordinance is overbroad, unconstitutionally vague, and violative of its substantive due process rights. Am. Compl. ¶¶ 195–99. It fails, however, to explain how the ordinance fails on these constitutional grounds. *Id.* Instead, in making these allegations Grand Medford offers nothing more than "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. I, therefore, dismiss these claims as insufficiently pleaded.

## X.     Remaining State Law Claim

Plaintiffs also allege that New York State Town Law sections 277(9)(d) and (e) preempt

Brookhaven Town Code sections SR-17(C) and (F). Am. Compl. ¶¶ 155–62. This is a claim of purely state law. Because I have dismissed all of plaintiffs' federal claims and because this case is still in its infancy, I decline to exercise supplemental jurisdiction over the remaining state law claim. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *see also Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004) (explaining that "as a general proposition," the Second Circuit has held that "if all federal claims are dismissed before trial, the state claims should be dismissed as well" (internal quotations and alterations omitted)); *United Rentals, Inc. v. Wilper*, 626 F. Supp. 3d 546, 553 (D. Conn. 2022) (declining to exercise supplemental jurisdiction over plaintiff's state law claims because the court dismissed all of the federal claims and because the "case is still in its infancy and has not yet gone to trial").

## XI.  Amendment to Pleadings

Federal Rule of Procedure 15 requires that I "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). In fact, "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999). If plaintiffs request leave to amend a complaint but fail to submit a proposed amended complaint or explain the basis for their potential amendments, however, it is within my discretion to deny leave to amend. *See Corsini v. Nast,* 613 F. App'x 1, 4 (2d Cir. 2015) ("It is within the court's discretion to deny leave to amend implicitly by not addressing the request when leave is requested informally in a brief filed in opposition to a motion to dismiss."); *Klein v. Forster & Garbus, LLP,* No. 19-CV-6164 (DLI) (RML), 2021 WL 2646334, at *5 (E.D.N.Y. June 28,

2021) ("Additionally, Plaintiff's failure to submit a proposed amended complaint provides justifiable grounds upon which the Court may deny his request."); *Murray v. New York*, 604 F. Supp. 2d 581, 588–89 (W.D.N.Y. 2009) (denying plaintiff leave to amend his complaint because plaintiff "has not sufficiently shown exactly what he seeks to add to his complaint"). The Second Circuit has explained that failure to include a proposed amended complaint or otherwise state the basis for an amendment indicates a lack of diligence and good faith. *See State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990).

In a short paragraph at the end of their Opposition, plaintiffs request leave to replead, should I dismiss their Amended Complaint. *See* Opp'n 45. They fail, however, to attach a proposed amended complaint or otherwise indicate what their potential amendments would be. *See id.* They also do not explain the bases for any potential amendments. *See id.* As a result, except for the claims I dismiss on ripeness grounds alone, I deny plaintiffs' request for leave to amend their complaint. Should plaintiffs' claims I dismiss on ripeness grounds alone—Grand Medford's takings claims and the portions of plaintiffs' equal protection and First Amendment claims related to the Town's refusal to release their performance bonds—become ripe, they may amend their pleadings.

The claims that plaintiffs do not have leave to amend for failure to state or explain their potential amendments include: (1) the as-applied due process challenge to Brookhaven Town Code sections SR-17(C) and (F); (2) the § 1983 procedural due process claim; (3) the § 1983 substantive due process claim; (4) the procedural due process challenge against the Town of Brookhaven Wetlands & Waterways Ordinance; (5) the portion of the § 1983 equal protection claim dismissed on *Monell* grounds; (6) the portion of the § 1983 First Amendment claim dismissed on *Monell* grounds; and (7) plaintiffs' remaining state law preemption claim.

## CONCLUSION

For the foregoing reasons, it is hereby ordered that:

All claims against the Planning Board and Town Board are dismissed with prejudice;

Plaintiffs' as-applied due process challenge to Brookhaven Town Code sections SR-17(C) and (F) (Count I) is dismissed with prejudice;

Plaintiffs' state law preemption claim against the Town (Count II) is dismissed with prejudice, but plaintiffs may bring this claim in New York State court;

Plaintiffs' § 1983 procedural due process claim (Count III) is dismissed with prejudice;

Plaintiffs due process challenge to the Town of Brookhaven Wetlands & Waterways Ordinance (Count IV) is dismissed with prejudice;

Plaintiffs' 1983 equal protection claims (Counts V and VI) related to the Town's refusal to release the performance bond are dismissed without prejudice and plaintiffs have leave to amend their complaint should these claims become ripe;

Plaintiffs' § 1983 equal protection claims (Counts V and VI) that were dismissed on *Monell* grounds are dismissed with prejudice;

Plaintiffs' § 1983 takings claims (Count VII) are dismissed without prejudice and plaintiffs have leave to amend their complaint should these claims become ripe;

Plaintiffs' § 1983 substantive due process claims (Count VIII) are dismissed with prejudice;

Plaintiffs' First Amendment retaliation claim (Count IX) related to the Town's refusal to release the performance bond is dismissed without prejudice and plaintiffs have leave to amend their complaint should this claim become ripe;

Plaintiff's First Amendment retaliation claim (Count IX) related to the Town's delayed issuance of the certificates of occupancy is dismissed with prejudice.

SO ORDERED.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated:          January 17, 2024
                Brooklyn, New York

## Chapter SR. Subdivision Regulations

## Article V. Surety Bonds

## § SR-17. Performance bonds.

A.   The performance bond guarantees to the Town of Brookhaven the faithful performance of constructing the required public improvements as approved with the final plat.

B.   After the approval of the final plat and the performance bond by the Planning Board, the subdivider shall submit to the Planning Board a properly executed performance bond or certified check, together with the inspection fee of 4% of the bond amount, for review and final approval by the Town Board.

C.   The performance bond shall run for a period of one year; however, the Planning Board can act to extend the term of the bond in appropriate cases where such action would not be contrary to the intent of this regulation.

D.   After completing the construction of the public improvements covered by the performance bond and prior to the termination of the bond period, the subdivider's engineer shall amend the linens of the approved plan for street grades and drainage and indicate on these plans "AS CONSTRUCTED" along with the following certification signed by the engineer and placed on the plan:

I hereby certify that this plan shows locations, profiles and elevations of roads, curbs, sidewalks, drainage and other structures as actually constructed and that the information shown thereon was obtained from a survey made on

_____
Date

_____          _____
Signature                                                                    License No.

E.   These revised plans shall be submitted to the Planning Board with a letter requesting the release of the performance bond.

F.   The Planning Board will recommend to the Town Board the release of the performance bond upon the satisfactory completion of all work covered in the bond and the furnishing of as-built plans, mentioned in Subsection **D**, together with the properly executed instruments of dedication as hereinbefore provided and with a certificate of title showing freedom from all liens and encumbrances, including unpaid taxes, for all streets improved under the terms of the performance bond. After the Town Board and the Highway Department have approved the improvements for acceptance and approved release of the performance bond, the subdivider will be required to furnish a one-year maintenance bond to be approved simultaneously with the release of the performance bond.

# Chapter SR. Subdivision Regulations

## Article V. Surety Bonds

### § SR-18. Maintenance bonds.

A. The maintenance bond guarantees to the Town of Brookhaven the workmanship and materials for all public improvements constructed under the terms of the performance bond for a period of one year from the date of acceptance.

B. During the one-year period of the maintenance bond, the subdivider will be responsible for the repair or replacement of all defective construction work, materials, trees and landscaping.

## Chapter SR. Subdivision Regulations

## Article VIII. Construction of Public Improvements

## § SR-27. General instructions.

A.  Developers must consult with the Planning Board Engineer or his representative before beginning any construction work. They shall comply with the Town of Brookhaven construction specifications and any special directions that may have been issued by the Planning Board.

B.  The flow of traffic or the safety thereof on any street or highway within the Town shall not be restricted or endangered in any way by equipment, material or vehicles connected with the construction or sales of a subdivision. The developer must provide off-street parking space for all vehicles. Equipment or material shall not be stored within the right-of-way lines of any Town highway.

C.  Construction shall not be commenced until after a public hearing has been duly held on the particular subdivision map and the map approved. Building permits will not be issued by the Building Department before action by the Planning Board and filing of maps in the County Clerk's office. No road or drainage work may commence until drawings pertaining to such work have been approved by the Planning Board.

D.  During the construction of the required improvements covered under the terms of the performance bond, existing Town roads, streets and adjoining private property shall be kept free of debris caused by the construction operation or by stormwater runoff from the development site. Any damage so caused shall be immediately repaired by the developer at his own expense. If, after due notice by the Planning Board, the developer does not proceed to make the necessary repairs or to remove the debris caused by his operations, the Town Board may take necessary measures to correct the situation, and the costs shall be paid by the developer.

E.  Deposit required; funds in escrow.
    [Amended 4-27-2017 by L.L. No. 10-2017, effective 5-10-2017]

  (1)  In each case where an application is made for the issuance of a certificate of occupancy prior to the completion and acceptance of the public improvements in the subdivision or any section thereof, the applicant shall deposit with the Town of Brookhaven the sum as established by Town Board resolution. Said sum shall be held in escrow by the Town pending the completion and acceptance of the public improvements. Should the public improvements fail to be completed, the Town may complete the same using the funds held in escrow under the following conditions:

    (a)  If the Town gives appropriate written notice to the person or other legal entity primarily liable to the Town for the completion of the public improvements by certified mail, return receipt requested, and said person or other legal entity fails to complete the same within a reasonable time as specified in the notice, then the Town may complete said improvements and charge back the funds held in escrow with respect to that particular subdivision or section thereof.

    (b)  In the event that the consulting engineer for the Town and the Superintendent of Highways determine that an emergency exists which imperils life or property within the Town of Brookhaven, then the Town may use the funds deposited with respect to the particular subdivision in order to correct said emergency conditions without notice to the person or legal entity having deposited funds with the Town.

  (2)  The person or legal entity applying for the certificate of occupancy shall be responsible for the deposit as established by Town Board resolution per certificate of occupancy. In the event that there is more than one person or legal entity which has applied for certificates of occupancy in a subdivision, then the cost of performing any work in any subdivision or section thereof shall be determined by prorating the number of lots owned by each such person or legal entity into the total number of lots in the subdivision or section thereof. The sum of money remaining on deposit with the Town upon completion and acceptance of the public improvements shall be returned to the person or other legal entity which deposited the same with the Town.

  (3)  Any applicant for a certificate of occupancy prior to completion and acceptance of the public improvements shall be required to execute an agreement with the Town incorporating the terms of this section and permitting the Town or its duly appointed agent, employee or servant to come onto the property owned by the applicant in order to perform the work which may be required.

  (4)  Should any funds be withdrawn to complete work, the Planning Board shall require the person or legal entity responsible for performing such work to replenish such fund, taking into consideration the amount expended and the number of outstanding certificates of occupancy for lots in subdivisions where the performance bonds have not been released. Such amount, as determined by the Planning Board, shall be paid upon the issuance of the next certificate of occupancy.